The plaintiff, Ronald Eason, was injured when he was struck by an automobile driven by the defendant, Julie Comfort.[1] The plaintiff appeals from a judgment for the defendant in his action seeking money damages based on his injuries.
The evidence tended to show that 60-year-old Eason arrived at his home at approximately 4:50 p.m. on the date of the accident, and was joined by two colleagues, Larry Stanfield and Mike White; that while at home, Eason drank two martinis, each of which, he said, contained approximately two jiggers, or about three ounces, of vodka that was "diluted" with an additional "good dollop" of vermouth; and that after consuming drinks and snacks, the three men left Eason's home at approximately 6:15 p.m. and drove to a restaurant in Mountain Brook, Alabama, for dinner. According to the testimony at trial, no alcoholic beverages were consumed with the meal. Eason consented to a blood test after the accident, and, according to the testimony of Dr. Andrew Robinson, Eason's blood alcohol level was .10%. Dr. Robinson testified that a man Eason's size, which was approximately 210 pounds, would have to consume *Page 1070 
a minimum of seven ounces of alcohol to reach a .10% blood alcohol level. On cross-examination, Dr. Robinson then stated that, according to his calculations, Eason could have consumed from six to eight ounces of alcohol.
When the men left the restaurant, at approximately 7:30 p.m., it was dark and a light rain or mist was falling. They had to walk across Church Street to reach the car they were traveling in, and the witnesses' testimony varied on the precise path they took. The testimony generally showed that they crossed near the intersection of Church and Dexter Streets, possibly at a slight angle, and not within a marked crosswalk. White and Stanfield walked next to one another as they crossed the street, while Eason, for an undetermined reason, remained 6 to 12 feet behind them. Eason was carrying two cartons containing leftover food, and he testified that he looked down at the cartons periodically to be sure that liquid from the food was not dripping onto his suit.
Barry Newton, who was driving south on Church Street at the time of the accident, testified that the three men stepped off the sidewalk into the street from his right. They did not appear to notice him, the witness said, and he jammed on his brakes to avoid hitting them. They continued across the street, and Eason was struck in the northbound lane of traffic, after White and Stanfield had stepped up onto the curb. According to Newton, Eason did not stop or look up from the time he stepped off the curb until he was struck.
Julie Comfort, the defendant, testified that immediately prior to the accident she was travelling approximately 25 miles per hour in the northbound lane of Church Street. She said she noticed only two people crossing the street from the left side, about half a block to a block away. She stated that when she saw the pair, she applied the brakes and almost stopped to be sure that they had ample time to cross the street. After the two men crossed the street, Comfort said, she accelerated in order to continue down the street. She heard a "thud" and realized that she must have hit someone. Comfort testified that she did not see Eason before he was struck.
An officer who investigated the accident testified that Comfort told him that she was travelling at 25 or 35 m.p.h., and that she told him, "[A]ll of a sudden there he was in front of me." When Eason's attorney asked the officer if Comfort had seen Eason before she hit him, the officer said he doubted it, but that it was possible. Eason testified that from the moment he stepped off the curb to cross the street until he was hit by Comfort's car, he did not stop and he did not see a car.
As a result of the accident, Eason suffered a dislocated shoulder, a torn rotator cuff, leg fractures, ligament and cartilage damage in his knee, and a concussion. He remained in the hospital for one month and spent an additional month at a rehabilitation center. His medical bills exceeded $40,000.
Eason filed suit on May 29, 1987, and alleged that Comfort negligently or recklessly drove her vehicle against him, causing him to suffer physical injuries and emotional distress. He sought $1 million in compensatory damages. Following a trial, the jury returned a verdict against Eason and in favor of Comfort. Eason filed a motion for a JNOV or a new trial, which the trial court denied in a written order. This appeal followed.
Eason first argues that the trial court erred in denying his request for a jury instruction on subsequent negligence. He contends that all the elements needed to prove subsequent negligence were present in this case, while Comfort argues that the requested jury charge was properly refused because, she says, it would have been based on nothing but hypothesis and conjecture.
The parties agree that the elements of subsequent negligence are:
 "(1) that the plaintiff was in a perilous position; (2) that the defendant had knowledge of that position; (3) that, armed with such knowledge, the defendant failed to use reasonable and ordinary care in avoiding the accident; (4) that the use of reasonable and ordinary care *Page 1071 
would have avoided the accident; and (5) that the plaintiff was injured as a result."
Zaharavich v. Clingerman, 529 So.2d 978, 979 (Ala. 1988). The disagreement is whether Comfort had actual knowledge of Eason's peril and whether she had the opportunity to avoid the accident through the exercise of reasonable care.
Eason argues that Comfort's knowledge of his peril could be inferred from the totality of the circumstances. In support of his argument, he cites the following: Comfort testified that she was watching the road directly in front of her; that she saw Stanfield and White cross in front of her car; that she told an investigating officer, "[A]ll of a sudden there he was in front of me"; and that the intersection was illuminated by the lights of automobiles and nearby businesses. Comfort argues that this evidence was insufficient to permit a jury to draw a reasonable inference that she knew of Eason's peril.
In Zaharavich, supra, the driver of a truck struck a pedestrian as she "jay-walked" across five lanes of traffic. The driver testified at trial that he did not see the pedestrian until she was almost in front of his truck, but acknowledged that earlier, in response to the interrogatory "What was the plaintiff doing?" he had stated that she was running and dodging traffic. This Court held that the jury could have resolved this conflict in favor of the pedestrian and could have inferred that the driver had knowledge of her peril and could have inferred that he had enough time to take reasonable steps to avoid the accident. The Zaharavich Court cited Dees v. Gilley, 339 So.2d 1000 (Ala. 1976), in support of its determination that a defendant's knowledge of a plaintiff's peril may be inferred. In Dees, the defendant driver observed an object in the road 200 to 300 feet in front of her vehicle, but did not attempt to go around the object. Her view was unobstructed, but only when the driver got closer did she realize that the "object" was two teenage boys, and she then "froze" and ran over them. This Court held that the evidence was sufficient to submit to a jury for its determination the question whether the driver had acquired actual knowledge in time to avoid the accident.
The facts of this case are distinguishable from those inZaharavich and Dees. Comfort's uncontested testimony at trial established that she saw White and Stanfield, but that she did not see Eason at any time prior to impact. She realized that she had hit someone only after she heard the "thud" sound caused by the impact. Thus, the evidence is not sufficient to establish unequivocally that Comfort had actual knowledge of Eason's peril, nor is it sufficient to permit a jury to infer that she had such knowledge. The trial court's refusal to charge the jury on subsequent negligence was not error.
A jury charge on subsequent negligence was not supported by the evidence for an additional reason, and that is that the doctrine is not properly applied where the manifestation of the plaintiff's peril and the accident are virtually instantaneous.Plenkers v. Chappelle, 420 So.2d 41, 44 (Ala. 1982). The record does not establish that Comfort failed to act in a reasonable manner to prevent the accident after she discovered Eason's peril, because her uncontradicted testimony was that she did not see Eason before the impact. Eason failed to introduce any evidence even suggesting that Comfort could have averted this accident after becoming aware of Eason's position. Because Eason failed to establish a prima facie case of subsequent negligence, the trial court did not err in refusing to give the requested charge.
Eason next argues that the trial court erred in admitting evidence that his blood alcohol level was .10%, because there was no testimony explaining the effect this alcohol level would have had on him. Eason contends that the evidence was irrelevant and might have confused the jury. Comfort argues that the evidence was relevant as tending to show the amount of alcohol Eason had consumed prior to the accident.
Evidence is relevant when it tends to shed some light on an issue in the case. Baker v. Merry-Go-Round Roller Rink, *Page 1072 Inc., 537 So.2d 1, 2 (Ala. 1988). Decisions on the relevancy of testimony are within the trial court's sound discretion, and will not be reversed unless they are plainly erroneous. Id. In this case, the amount of alcohol Eason consumed and whether he was intoxicated were matters at issue. Eason admitted that he had had two martinis, but he testified that they were "the diluted kind," made with approximately two jiggers of vodka that was "diluted" with a good bit of vermouth. Eason also testified that he was not at all intoxicated on the night of the accident. The testimony of Dr. Robinson regarding Eason's .10% blood alcohol level was relevant to the issues at hand, and its admission by the trial court was not error.
Eason's final argument is that the verdict was against the weight of the evidence and that the trial court therefore erred in denying his motion for a JNOV or for a new trial. He contends that Comfort was traveling too fast, failed to keep a proper lookout, and should have seen him before her vehicle struck him; he claims that the jury's verdict was contrary to the evidence presented at trial.
The appropriate standard of review of a denial of a defendant's motion for a JNOV is whether the evidence, when viewed in the light most favorable to the plaintiff, furnishes any support for the theory of the complaint. InterstateEngineering, Inc. v. Burnette, 474 So.2d 624 (Ala. 1985). A motion for a new trial on grounds that the verdict is against the manifest weight and preponderance of the evidence should be granted only in extreme cases, when letting the verdict stand would lead to a palpably wrong and unjust result. Bradford v.Kimbrough, 485 So.2d 1114, 1116 (Ala. 1986). The trial court's refusal to grant a new trial motion strengthens the presumption of correctness of the jury verdict. Id.
A careful review of the record establishes that the jury verdict is amply supported by the evidence. Viewing the evidence in the light most favorable to Comfort, it is clear that Eason crossed Church Street outside the marked crosswalk without keeping a lookout for oncoming traffic. He had consumed six to eight ounces of alcohol that evening and his blood alcohol level was .10%. There was evidence that Comfort almost stopped her car when she saw Eason's companions cross the street outside the crosswalk, but that she did not see Eason in front of her car before she struck him. The trial judge reviewed the evidence and found that the jury's verdict was fully supported by the evidence. Neither will we disturb the jury's verdict, because we find that it is in accord with the weight of the evidence and that to let it stand would not lead to a palpably wrong or unjust result.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] Since this proceeding began, the defendant married and is now known as Julie Comfort Lockhart. Because the legal documents refer to Julie Comfort, we will refer to the defendant as Comfort in this opinion.