1490

Robert JAMISON, Appellant v. THE PANTRY, INC., Respondent. Nellie
W. RUFF, as Administratrix of the Estate of Opal Ruff, Appellant v.
THE PANTRY, INC., Respondent. Kyle RUFF, a minor under the age
of eighteen (18) years, by his duly appointed Guardian ad Litem, Nellie
W. RUFF, Appellant v. THE PANTRY, INC., Respondent.

(392 S. E. (2d) 474)

Court of Appeals

*Kenneth M. Mathews* of *Scott & Mathews* and *John F. Hardaway*, Columbia, *for appellants.*

*Charles E. Carpenter, Jr.* and *Michael A. Pulliam*, both of *Richardson, Plowden, Grier & Howser*, Columbia, *for respondent.*

Heard March 13, 1990.

Decided April 16, 1990.

GOOLSBY, Judge:

These personal injury actions against The Pantry, Inc., by Robert Jamison, Nellie W. Ruff, as administratrix of the estate of Opal Ruff, and Kyle Ruff arise out of an alleged unlawful sale of beer. The actions were consolidated for trial. The trial court directed a verdict in The Pantry's favor. Jamison and the Ruffs appeal. The question on appeal concerns only the sufficiency of the evidence as to proximate cause. We reverse and remand.

The three complaints, among other things, allege that The Pantry sold beer to Willis Dean DeBruhl, a minor, that DeBruhl's consumption of the beer resulted in a head-on collision that injured Jamison and Kyle Ruff and fatally injured Opal Ruff, and that the sale of the beer by The Pantry was a proximate cause of the collision and of the injuries the collision brought about.

At trial, the trial judge granted The Pantry's motion for a directed verdict, finding simply that "as a matter of law there [is] insufficient evidence to submit the case to the jury." The grounds for The Pantry's motion were that Jamison and the Ruffs failed to prove that "any beer purchased at The Pantry was ever consumed prior to this accident [and] that any beer purchased from The Pantry was [a] proximate cause of the accident in question."

In determining the question of whether the trial judge properly granted The Pantry's motion for a directed verdict, we are required, as was the trial judge, to view the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to Jamison and the Ruffs and if there is even a "scintilla of evidence" tending to prove the allegations of the complaints, the motion should have been denied. *Sweatt v. Norman*, 283 S.C. 443, 322 S.E. (2d) 478 (Ct. App. 1984). Because a direction of a verdict is not favored, a case must be clear, certain, or indisputable to warrant a trial judge's granting of a motion seeking a directed verdict. 88 C.J.S. *Trial* § 257(b) at 627 (1955).

A review of the evidence and its reasonable inferences in the light most favorable to Jamison and the Ruffs follows.

On September 5, 1986, Mark Uggiano talked to DeBruhl, a nineteen-year-old, at a high school football game and arranged to meet him after the game at The Pantry.

Uggiano left the game sometime near the end of the third

quarter or the beginning of the fourth quarter. In high school football, a quarter is 12 minutes. The game ended at approximately 9:30 p.m.

Thirty or forty minutes after leaving the game, Uggiano met DeBruhl and Richard Derodo in Dusty Bend at The Pantry, a convenience store. DeBruhl, who was not intoxicated at the time,[1] bought a case of beer from The Pantry.

The beer, which The Pantry was licensed to sell, was put into a paper bag and DeBruhl carried it to his car. DeBruhl got into the car and handed the beer to Uggiano who sat on the back seat. The beer DeBruhl purchased was the only beer in the car.[2]

---

[1] We infer from the following that DeBruhl was not intoxicated:

Q. (By Mr. Hardaway): Did you see Willis Dean DeBruhl on September the 5th, 1986?
A. (By Mr. Uggiano): Yes, sir.

. . . .

Q. When did you first see him?
A. I saw him at the football game at Camden High.

. . . .

Q. Did he appear to be drunk?
A. No, sir, he didn't.

. . . .

Q. When you saw Willis Dean DeBruhl at The Pantry when he came there that night, describe what he looked like then?
A. Nothing out of the ordinary, same way.
Q. Was he drunk?
A. Not that I could tell.

. . . .

And from the following:
Q. (By Mr. Pulliam): . . . In your opinion, as an eyewitness, was he drunk or intoxicated when he went into [The] Pantry?
A. (By Mr. Uggiano): As far as I know, no.

. . . .

[2] We infer from the following that the beer bought by DeBruhl from The Pantry was the only beer in the car:

Q. (By Mr. Hardaway): . . . Was there any particular reason for ya'll to meet at this particular Pantry?
A. (By Mr. Uggiano): To buy beer so that we could head out to sorority night.

. . . .

Q. How much beer did he buy?
A. A case.

. . . .

Q. How much beer did Willis Dean DeBruhl buy that night?
A. I only saw a case.

. . . .

Q. (By Mr. Mathews): Now, when Dean went into The Pantry and he came back out, did he give you something in the back seat?

At 10:45 p.m., a mile from The Pantry, DeBruhl's car collided head-on with another car. The collision killed both DeBruhl and the driver of the other car, Opal Ruff, and injured the passengers in her car, Jamison and Kyle Ruff. DeBruhl was the at-fault driver.

A highway patrolman found opened beer cans inside the car, along with unopened beer cans in a paper bag and inside an ice chest. DeBruhl's blood alcohol level was determined to be .135. This amount of alcohol is sufficient to bring a person under its influence to such an extent as to impair the person's faculties. *See State v. Sheppard,* 248 S.C. 464, 150 S.E. (2d) 916 (1966) (a person is under the influence of alcohol or drugs when the ingestion of alcohol or drugs results in the impairment of the person's faculties).

■ We think the evidence just recited supports the inferences that DeBruhl purchased beer at The Pantry no later than about 9:58 p.m.,[3] or approximately 47 minutes before the accident at 10:45 p.m., that the beer sold DeBruhl by The Pantry was the only beer in the car, that DeBruhl consumed from the opened cans found in his car some of the beer purchased from The Pantry, and that his consumption of the beer caused him to be under the influence

---

A. He gave me the beer.

. . . .

Q. Did you see any other beer in the car at that time?
A. No, sir. I didn't.

. . . .

Q. (By Mr. Hardaway): When . . . Willis Dean DeBruhl bought that beer and brought it back to the car, was there any other beer in the car?
A. Not that I could see.
Q. Were there any other coolers in the car?
A. Not that I know of.

. . . .

[3] We determined the time this way: the game ended at approximately 9:30 p.m.; a quarter of high school football is 12 minutes; Uggiano left the game either at the end of the third quarter or at the start of the fourth; assuming it actually took only 12 minutes to play the 12-minute quarter, which is highly unlikely, Uggiano left the game at approximately 9:18 p.m.; and he met DeBruhl at The Pantry 30 or 40 minutes later, or at approximately 9:48 or 9:58 p.m. Had it taken longer than 12 minutes to play the fourth quarter, then Uggiano, obviously, would have left the game earlier than approximately 9:18 p.m. and would have met DeBruhl earlier than approximately 9:48 or 9:58 p.m. Viewing the evidence as suggesting that Uggiano left the game at approximately 9:18 p.m. and not earlier favors The Pantry and not Jamison and the Ruffs.

of alcohol and impaired his driving ability.

We also think the evidence just recited supports the inference that The Pantry's sale of beer to DeBruhl, a minor, in violation of Sections 61-9-40 and 61-9-410 of the South Carolina Code of Laws (1976) (Rev. 1990)[4] was a proximate cause of the injuries suffered by Jamison and the Ruffs.[5] It was reasonably foreseeable that a nineteen-year-old who was sold a case of beer by a convenience store in violation of statutes would consume a portion of the beer, would become intoxicated, would drive an automobile, would collide with another vehicle, and would injure or kill someone. *Freeman v. Finney*, 65 N.C. App. 526, 309 S.E. (2d) 531 (1983).

A jury issue existed, therefore, regarding whether The Pantry's sale of the beer to DeBruhl in violation of Sections 61-9-40 and 61-9-410 was a proximate cause of the injuries sustained by Jamison and the Ruffs. *Id.; Michnik-Zilberman v. Gordon Liquors, Inc.*, 14 Mass. App. 533, 440 N.E. (2d) 1297 (1982), *aff'd*, 390 Mass. 6, 453 N.E. (2d) 430 (1983); *see Christiansen v. Campbell*, 285 S.C. 164, 328 S.E. (2d) 351

---

[4] Section 61-9-40 of the South Carolina Code of Laws (1976) (Rev. 1990) provides in part as follows:

(A) It is unlawful for any person to sell beer . . . to a person under twenty years of age and effective September 14, 1986, under twenty-one years of age. Any person making such unlawful sale must be, upon conviction, fined not less than one hundred dollars nor more than two hundred dollars or imprisoned not less than thirty days nor more than sixty days, or both, in the discretion of the court.

. . . .

Section 61-9-410 provides in part as follows:

No holder of a permit authorizing the sale of beer . . . or any servant, agent, or employee of the permittee shall knowingly do any of the following acts upon the licensed premises covered by the holder's permit:

(1) sell beer or wine to a person under twenty years of age and effective September 14, 1986, under twenty-one years of age;

. . . .

A violation of . . . the foregoing provision[ ]is a ground for the revocation or suspension of the holder's permit.

[5] Although The Pantry's motion for a directed verdict cannot fairly be said to have raised the issue of whether the *sale* by The Pantry of the beer to DeBruhl was a proximate cause of the injuries sustained by Jamison and the Ruffs, the latter included and argued, cautiously no doubt, an exception directed to the issue. Moreover, The Pantry devoted several pages of its brief to the question.

(Ct. App. 1985), *cert. denied,* S.C. Sup. Ct. Order dated June 27, 1985 (the question of proximate cause was for the jury to determine where a licensed retailer sold beer to an intoxicated person in violation of Section 61-9-410); *Bartley v. Floyd,* 695 P. (2d) 781 (Colo. App. 1984), *aff'd,* 727 P. (2d) 1109 (Colo. 1986) (a jury issue existed regarding whether it was foreseeable that a seventeen-year-old who was sold beer in violation of a statute would share the beer with friends, one of whom was driving, and later collide with the plaintiff's motorcycle).[6]

Reversed and remanded.

SANDERS, C.J., and SHAW, J., concur.

---

[6] We note that The Pantry did not raise at trial the issue of whether Sections 61-9-40 and 61-9-410 of the South Carolina Code of Laws (1976) (Rev. 1990) supply a basis for civil liability when violated. *See Christiansen v. Campbell,* 285 S.C. 164, 328 S.E. (2d) 351 (Ct. App. 1985), *cert. denied,* S.C. Sup. Ct. Order dated June 27, 1985 (the violation of Section 61-9-410 held to provide a basis for a civil liability). These statutes clearly impose a duty not to sell beer to minors. Indeed, their purpose is to protect both the minor and the public at large from the possible adverse consequences of the minor's intoxication. *See Freeman v. Finney,* 65 N.C. App. 526, 309 S.E. (2d) 531 (1983) (construing a North Carolina statute similar to Section 61-9-40).