492 S.E.2d 816

**Robin GULLEDGE, as Personal Representative of the Estate of Robert Allen Gulledge, Appellant.**

v.

**Lela Mae McLAUGHLIN, Respondent.**

**No. 2727.**

Court of Appeals of South Carolina.

Submitted Sept. 9, 1997.

Decided Sept. 29, 1997.

Rehearing Denied Nov. 20, 1997.

Jack L. Nettles, of Nettles & Nettles, Florence, for appellant.

James W. Peterson, Jr., of Clarke, Johnson, Peterson & McLean, Florence, for respondent.

CURETON, Judge:

In this lawsuit arising from an automobile accident, Robin Gulledge (Mrs. Gulledge), the personal representative of the

estate of Robert Gulledge (Gulledge), appeals from a jury verdict in favor of Lela Mae McLaughlin (McLaughlin). We affirm.[1]

## I.  FACTS

This action arises from an automobile accident occurring at about 4:10 p.m. on September 28, 1989.  Evidently, the right front of Gulledge's pickup truck struck the left rear of McLaughlin's car as Gulledge attempted to pass McLaughlin on a two-lane rural road.  Gulledge's truck flipped a number of times following the impact, and Gulledge landed in a ditch after he was thrown from the truck.  Both drivers were injured, but Gulledge died that evening from cardiac arrest, secondary to hemorrhagic shock caused by the accident.

Initially, McLaughlin filed a negligence action against Gulledge's estate in 1990, and Mrs. Gulledge, after answering, moved to file a counterclaim.  The trial court denied the motion, but this court reversed that denial in an unpublished opinion in 1992.  Shortly after this court's reversal, Gulledge's liability carrier settled with McLaughlin on her claim, and McLaughlin's liability carrier settled with Mrs. Gulledge on a Covenant Not to Execute.  Mrs. Gulledge's counterclaim was then served on the underinsured carrier, who assumed the defense.  Mrs. Gulledge then filed a complaint which realigned McLaughlin as the defendant, and McLaughlin answered with a denial and a plea of contributory negligence.

After trial in October 1995, the jury returned a verdict for McLaughlin.

## II.  OPINION TESTIMONY FROM A PATROLMAN

Mrs. Gulledge first challenges, as inadmissible opinion evidence, the trial court's allowance of portions of a highway patrolman's testimony.  We hold that reversal is not warranted in any event because the testimony is cumulative to other evidence.

---

**1.**  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

Trooper David Whatley of the South Carolina Highway Patrol was one of the officers who responded to the accident. He testified at trial about his observations of the scene. At the time of the accident, Whatley had been a trooper for six months, and was not qualified as an expert in accident reconstruction. After extensive discussion among counsel and the trial court as to what Whatley could testify, the following occurred:

DEFENSE COUNSEL: Trooper Whatley—and—and I'm going to preface this question with a warning that I'm not asking you for an opinion as to how this accident occurred. That's not what I'm looking for. What I want you to do is tell us what, if any, physical evidence you found at the scene of the accident upon your arrival and investigation that *indicated to you* that Ms. McLaughlin drove her car improperly? (Emphasis added).

Plaintiff's counsel objected. The trial court ruled the question proper, because the trooper was not alleging he was an eyewitness but was giving "an opinion based on ... all the facts and circumstances at the scene." After the trial court noted the plaintiff's objection for the record, the following occurred:

DEFENSE COUNSEL: Okay. What I'm asking you is: What, if any, physical evidence did you find at the scene of the accident that *indicated to you* that Ms. McLaughlin had driven her car improperly? (Emphasis added).

TROOPER: None of the marks that I looked at that were on the opposite side of the roadway could be traced back to her vehicle. Every indication of what I saw from the roadway would have put her in her proper lane. All the indications that I saw from the roadway would have indicated that the other vehicle—

DEFENSE COUNSEL: I'm not asking you—

TROOPER: Okay. I'm sorry.

DEFENSE COUNSEL: —to describe or give any opinion as to what happened.

TROOPER: There's—Okay. I—I guess just leave it at—at that. Nothing I saw in the roadway would—

COURT: All right, sir.

Clearly, the question asked for opinion because it inquired whether the physical evidence "indicated" to the patrolman that the defendant was driving properly. A witness must have personal knowledge of a matter in order to testify about it. Rule 602, SCRE. However, opinion testimony from a lay witness is admissible if it is: (a) rationally based on the perception of the witness, (b) helpful to the determination of a fact in issue, and (c) does not require special knowledge, skill, experience, or training. Rule 701, SCRE. Some statements, however, are not mere opinions but are impressions drawn from collected, observed facts. *Lafon v. Commonwealth,* 17 Va.App. 411, 438 S.E.2d 279 (1993), *cited in State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996).

In any event, a long line of South Carolina decisions has excluded the opinions of investigating police officers in automobile accident cases. *See Jackson v. Price,* 288 S.C. 377, 342 S.E.2d 628 (Ct.App.1986) (error to permit highway patrolman to testify as to point of impact, but his testimony was cumulative to other testimony that defendant's car was over the center line at impact). *See also State v. Kelly,* 285 S.C. 373, 374, 329 S.E.2d 442, 443 (1985) ("A police officer may not give his opinions as to the cause of an accident. He may only testify regarding his direct observations unless he is qualified as an expert."); *Gentry v. Watkins–Carolina Trucking Co.,* 249 S.C. 316, 154 S.E.2d 112 (1967) (holding it was error, although harmless, to allow patrolman to testify that van's wheel had been "knocked off"); *Willard v. McCoy,* 234 S.C. 317, 108 S.E.2d 113 (1959) (reversing judgment for plaintiff because patrolman who was not an eyewitness testified as to speed as well as how many times a car overturned); *Thompson v. South Carolina State Highway Dept.,* 224 S.C. 338, 79 S.E.2d 160 (1953) (highway patrolman who did not see accident was not competent to testify about speed of car); *Huggins v. Broom,* 189 S.C. 15, 199 S.E. 903 (1938) (stating that a person who often photographs car wrecks is no more qualified to give an opinion than is a highway patrolman who often visits the scene of wrecks). *Cf. Johnston v. Bagger,* 151 S.C. 537, 149 S.E. 241 (1929) (holding that the trial court properly prevented witnesses from answering a question asking whether the defendant did everything he could to avoid hitting plaintiff). *But cf. Doremus v. Atlantic Coast Line R.R. Co.,*

242 S.C. 123, 130 S.E.2d 370 (1963) (upholding decision to allow patrolman to testify as to speed based upon length of skid marks, as patrolman testified he had conducted tests on the relationship between skid marks and speed under similar conditions); *Robinson v. Duke Power Co.*, 213 S.C. 185, 48 S.E.2d 808 (1948) (permitting non-eyewitness patrolman to testify regarding point of impact was not prejudicial where patrolman determined point of impact from the position of vehicles, broken glass, and skidmarks, and photographs corroborated the testimony).

■ Assuming it was error to permit the patrolman to testify as he did in this case, we hold the testimony cumulative in any event and thus an insufficient ground for reversal. Mrs. Gulledge's witness, Katrina Eaddy, testified on direct examination that Gulledge only moved about halfway into the oncoming lane when attempting to pass McLaughlin. On cross-examination, Eaddy testified McLaughlin's car was "driving straight in the road," and was not being operated in an erratic or unusual manner. Mrs. Gulledge's other witness, Richard Ard, testified Gulledge's truck was travelling at a fast rate of speed and never fully moved into the oncoming lane when it attempted to pass. Ard also stated McLaughlin's car did not cross over into the oncoming lane. Although there was conflicting evidence as to whether McLaughlin engaged her turn signal as she slowed, the record on appeal does not contain any evidence whatsoever that McLaughlin moved outside of her lane of traffic. The heart of the patrolman's testimony at issue was merely that none of the marks he observed indicated McLaughlin was outside of the appropriate lane. Thus, the highway patrolman's statement was cumulative to undisputed portions of the testimony of eyewitnesses Eaddy and Ard. *Cf. Price*, 288 S.C. at 381, 342 S.E.2d at 630–31.

## III. ADMISSION OF EVIDENCE OF BLOOD ALCOHOL CONTENT

Mrs. Gulledge next challenges the trial court's allowance of evidence that tests ordered by Gulledge's treating medical personnel indicated that he had a blood alcohol content (BAC) of .166 at 5:50 p.m. on the day of the accident. At trial, Mrs. Gulledge objected to the evidence of BAC on the grounds of

relevancy, and she contends that a lab analysis of BAC is by itself insufficient to submit the issue of driving under the influence (DUI) to the jury. We hold the evidence was properly admitted.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401, SCRE. In the present case, McLaughlin pled contributory negligence, which completely bars a plaintiff's recovery if his own negligence contributed to his damages. *See, e.g. Langley v. Boyter,* 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984), *quashed,* 286 S.C. 85, 332 S.E.2d 100 (1985). The trial court charged the jury that it is a criminal offense for one to drive while under the influence of intoxicants. S.C.Code Ann. § 56–5–2930 (Rev.1991). Negligence *per se* is established by proof that a party violated a statute which has the essential purpose of protecting persons such as the injured party from the kind of harm suffered. *See Whitlaw v. Kroger Co.,* 306 S.C. 51, 410 S.E.2d 251 (1991). Obviously, the fact that the plaintiff was driving under the influence would be "of consequence to the determination of the action," in an automobile accident case where contributory negligence was pled. Even more obviously, evidence of BAC tends to make the existence of this fact more or less probable, and thus evidence of BAC can be relevant. *See generally,* 31A C.J.S. *Evidence* § 219 (1996).

The narrower issue is whether lab results alone are sufficient to submit the issue of DUI to a civil jury, in a case where the inferences of intoxication in the implied consent statute, S.C.Code Ann. § 56–5–2950 (Supp.1996), are not charged.[2] Mrs. Gulledge notes that no evidence indicated Gulledge either was acting in an intoxicated manner or smelled of alcoholic beverages. In fact, she points out that the ambulance personnel who transported Gulledge specifically testified they did not observe anything that would indicate Gulledge had been drinking. She further states there were "irregularities" with the

---

**2.** Mrs. Gulledge argued at trial that the inferences of intoxication in the implied consent statute should not be charged. McLaughlin responded that she was not seeking such a charge, as she conceded that the statute implied the inferences were not applicable in a civil case.

blood sample. Finally, she notes that no other evidence was presented to the jury as to the effect of a particular BAC level on a human. Thus, Mrs. Gulledge concludes that evidence of the blood test alone allowed the jury to reach a verdict on the basis of conjecture and speculation. *Cf. Sandberg v. Hoogensen*, 201 Neb. 190, 266 N.W.2d 745 (1978) (evidence of BAC is only relevant if accompanied by expert opinion evidence as to the effect of such a BAC). We find no reversible error.

■ The admission of evidence is within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994). Initially, we note Mrs. Gulledge cross-examined the medical personnel as to any possible "irregularities" in the taking of the blood sample, and since Mrs. Gulledge does not challenge the chain of custody, these "irregularities" went to the weight of the BAC reading, and not its admissibility. *Cf. State v. Smith*, 326 S.C. 39, 482 S.E.2d 777 (1997)

Next, we note that witnesses observed empty "fresh" beer cans as well as an overturned blue cooler near the point where Gulledge's truck came to rest. Although the cans and cooler were not directly linked to Gulledge by anything other than their proximity to his wrecked truck, they at least provide some other corroborating evidence that Gulledge had been drinking. We believe the circumstances of this accident also provide some corroborating evidence that Gulledge was driving while under the influence of intoxicants. *Cf. Parry v. Staddon*, 769 S.W.2d 811 (Mo.Ct.App.1989) (otherwise inadmissible BAC evidence was admissible due to evidence showing that the deceased motorist inexplicably struck a slower vehicle from behind in good road and weather conditions). *Cf. also Chaney v. Burgess*, 246 S.C. 261, 143 S.E.2d 521 (1965) (while South Carolina does not expressly recognize *res ipsa loquitur*, one may prove negligence with circumstantial evidence). Finally, the medical technologist explained BAC to some degree, by testifying that a BAC of .4 to .5 would be inconsistent with life. BAC, even without further explanation, at least allowed the jury to conclude that Gulledge had alcohol in his bloodstream, and this, when combined with the beer cans, the cooler, and the circumstances of the accident, were sufficient for the jury to conclude that Gulledge was impaired from alcohol consumption. Thus, the trial court did not abuse

its discretion and lead the jury into the realm of confusion, speculation, or conjecture, by admitting evidence of BAC. *Cf. Eason v. Comfort,* 561 So.2d 1068 (Ala.1990) (even though no evidence was presented as to BAC's effect on plaintiff, BAC evidence was relevant as plaintiff admitted drinking but claimed he was not intoxicated); *Edwards v. Ellis,* 478 So.2d 282 (Miss.1985) (BAC test ordered for purposes of medical treatment, and separate and distinct from test ordered by police, was admissible in civil action, especially in conjunction with other competent evidence of intoxication); *Vance Trucking Co. v. Phillips,* 51 N.C.App. 85, 275 S.E.2d 497 (1981) (breathalyzer reading was admissible in civil action as additional evidence to other testimony that the defendants were drinking); *Jamison v. The Pantry, Inc.,* 301 S.C. 443, 392 S.E.2d 474 (Ct.App.1990) ("[The plaintiff's] blood alcohol level was determined to be .135. This amount of alcohol is sufficient to bring a person under its influence to such an extent as to impair the person's faculties.").

## IV. CONCLUSION

We hold that the opinion testimony of the highway patrolman was cumulative in any event, and thus no ground for reversal. We further hold the trial court did not abuse its discretion by admitting the evidence of BAC.

Accordingly, we

**AFFIRM.**

GOOLSBY and CONNOR, JJ., concur.