592 S.E.2d 296

**Wanda STANLEY, Respondent,**

v.

**Kevin KIRKPATRICK, in his official capacity as Columbia Dog Catcher, Petitioner.**

No. 25769.

Supreme Court of South Carolina.

Heard Oct. 21, 2003.

Decided Jan. 12, 2004.

Rehearing Denied Feb. 18, 2004.

Dana M. Thye, of the Office of the City Attorney, of Columbia, for petitioner.

M. Baron Stanton, of Stanton Law Offices, P.A., of Columbia, for respondent.

William H. Davidson, II, and Kenneth P. Woodington, of Davidson, Morrison and Lindemann, P.A., of Columbia, for Amicus Curiae South Carolina Municipal Association.

Justice MOORE:

Respondent commenced a 42 U.S.C. § 1983 [1] action against petitioner (the City) alleging the City had a policy or custom of attempting to oppress and financially hobble her. We granted certiorari to determine whether the Court of Appeals erred by reversing the trial court's order granting the City summary judgment and denying respondent's motion to amend her complaint. *Stanley v. Kirkpatrick*, 2001–UP–016 (S.C. Ct.App. refiled October 3, 2001). We affirm in part and reverse in part.

## FACTS

Respondent bred Shar–Pei dogs at her Columbia home. Due to the complaints of neighbors, the City fined respondent several times for operating an unlawful kennel and for keeping unlicensed pets. Officer Kevin Kirkpatrick issued at least three of these citations.

Kirkpatrick testified he received a complaint in July 1996. As a result, he, along with Officer H.P. Stephenson of the Humane Society, visited respondent's home and saw fifteen Shar–Pei dogs inside the house and in the backyard, which was enclosed with a metal gate. On July 8, 1996, Stephenson and Kirkpatrick returned to the residence in an effort to acquire details for a search warrant. On this visit, they saw five female Shar–Pei puppies running around the street and in the neighbor's yard. They captured the at-large puppies.

The following day, Kirkpatrick served a warrant on respondent, citing her for violating a city ordinance restricting the number of dogs per residence. He informed respondent he had captured five puppies that were taken to the Animal Services Shelter (the shelter) and that she needed to contact

---

1. 42 U.S.C. § 1983 provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the shelter to identify the puppies. While Kirkpatrick assumed the dogs were respondent's, he testified that because the dogs were picked up at-large, there was still a question whether they were truly hers.

In her deposition, respondent disputed the events as related by Kirkpatrick and Stephenson. She testified she believed Kirkpatrick opened the gate, entered her backyard, and removed her dogs.[2] However, she stated she did not see him open the gate, nor did anyone tell her they saw him open the gate. She stated a dog had never escaped from her backyard, and there was mesh screening around the gate to prevent such an occurrence.

Respondent contacted the shelter and was informed she would have to pay $129 per dog to redeem them.[3] Two employees at the shelter testified they directly informed respondent she had to identify the dogs because the shelter holds unidentifiable animals for only five days.[4] Respondent claimed no one told her she had only five days to retrieve the dogs.

Because no one came to the shelter to identify the dogs, they were euthanized. They were found to be unsuitable for adoption because they had a skin problem and were aggressive towards each other and the handlers.

Respondent filed a § 1983 claim against the City. She later filed a motion to amend the complaint to add state tort claims to her § 1983 lawsuit. The City filed a motion for summary judgment. The trial court denied the motion to amend and granted the City's motion for summary judgment.

The Court of Appeals reversed the trial court's denial of respondent's motion to amend her complaint to add state tort claims and reversed the trial court's order granting summary judgment on the § 1983 claim.

---

2. Respondent further testified that, at a prior court hearing on her citations, Kirkpatrick told her, "I'll find your dogs." Kirkpatrick denied the conversation.

3. This fee included a $76 fine for the puppy being at-large, a $20 impound fee, $28 for spaying, and $5 for a future rabies vaccination.

4. Section 9–5027(a) of the Columbia City Code states, "[I]mpounded animals not redeemed within five (5) days may thereafter be humanely destroyed by the animal control division."

## ISSUE I

Did the Court of Appeals err by reversing the trial court's denial of respondent's motion to amend her complaint?

## DISCUSSION

Respondent served her original complaint asserting a § 1983 claim in February 1997. The City filed its motion for summary judgment in July 1998. Respondent later served her motion to amend the complaint to add the tort claims of trespass and conversion.

Following hearings, the court issued an order denying respondent's motion to amend on the basis it was made more than two years after the incident and that the applicable statute of limitations had passed on the causes of action against the City under the South Carolina Tort Claims Act.[5] The court noted the motion to amend was denied based on the prejudice to the defendants and the absence of good cause shown to allow the amendments. The Court of Appeals reversed the trial court.

Rule 15(a), SCRCP, provides that, if more than thirty days have elapsed from the time a responsive pleading is served, a party may amend his pleading only by leave of court or by written consent of the adverse party. The rule further provides this leave will be freely given when justice so requires and does not prejudice the other party.

 It is well established that a motion to amend is addressed to the discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice. *Tanner v. Florence County Treasurer*, 336 S.C. 552, 521 S.E.2d 153 (1999). The prejudice Rule 15 envisions is a lack of notice that the new issue is to be tried and a lack of opportunity to refute it. *Id.*

 The trial court erred by not allowing the amendment on the basis the City was prejudiced and respondent had not

---

5. S.C.Code Ann. § 15-78-110 (Supp.2002) provides: "... any action brought pursuant to [the Tort Claims Act] is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered ..."

shown good cause for the amendment. The burden is not on the movant, but on the party opposing the motion to show how it is prejudiced. *See Tanner, supra* (responsibility of party opposing amendment to establish prejudice). The City argues the amendment prejudices it because the statute of limitations on the tort claims had passed and because depositions would have to be retaken if the amendment is allowed. However, given the facts of the case, *i.e.* the events giving rise to the claims, are not different from the facts that gave rise to the § 1983 claim, depositions would not have to be retaken. Therefore, the City's argument of prejudice on this point is without merit.

■ The City's argument the amendment prejudices it because the statute of limitations has passed is likewise without merit. Rule 15(c), SCRCP, states: "[w]henever the claim ... asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading." Respondent's tort claims arose out of the conduct previously set forth in the original complaint. The factual circumstances of the tort claims of trespass and conversion have already been set out in the original complaint asserting a § 1983 claim. No new information is required to assert those tort claims. Therefore, under Rule 15(c), the amendment relates back to the date of the original pleading that was filed within the statute of limitations. *See also Thomas v. Grayson,* 318 S.C. 82, 456 S.E.2d 377 (1995) (purpose of Rule 15(c) is to salvage causes of action otherwise barred by statute of limitations).

Accordingly, the Court of Appeals properly found the trial court erred by not allowing the amendment of the tort claims.

## ISSUE II

Did the Court of Appeals err by reversing the trial court's order granting the City's motion for summary judgment?

### DISCUSSION

The City argues the Court of Appeals erred by reversing the trial court's order granting summary judgment to the City on respondent's § 1983 action.

■ Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law. *Cunningham ex rel. Grice v. Helping Hands, Inc.*, 352 S.C. 485, 575 S.E.2d 549 (2003). In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

▮ Section 1983 allows a civil action to recover damages for deprivation of a constitutionally protected right. In any § 1983 action, "a plaintiff is required to plead three elements: (1) an official policy or custom (2) that causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Moore v. City of Columbia,* 284 S.C. 278, 326 S.E.2d 157 (Ct.App. 1985).

Respondent claims the City's policy or custom[6] is to oppress and financially hobble her by charging fines without a lawful citation, by destroying her animals without time restrictions, and by entering her enclosed backyard without a warrant. Considering the evidence in the light most favorable to her, the factual inferences that can be made from the evidence do not rise to the level of a policy[7] or custom set for the purpose of oppressing and financially hobbling her.

6. The City argues the Court of Appeals erred by holding the identity of the policymaker was a factual issue. To the extent the Court of Appeals' decision can be read to conclude the identity of the policymaker is a factual issue, we find this holding incorrect. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (as with other questions of state law relevant to application of federal law, identification of officials whose decisions represent official policy of local governmental unit is itself legal question to be resolved by trial judge before case is submitted to jury). In the present case, the City has elected to adopt the council/manager form of government. In this form of government, all legislative powers of the municipality and the determination of all matters of policy shall be vested in the municipal council, with each member, including the mayor, to have one vote. S.C.Code Ann. § 5–13–30 (1977). Therefore, the shelter and those employed by the shelter do not have the authority to set city policy, nor can their acts be said to represent official policy in view of the legislative authority granted to the municipal council. *See Todd v. Smith*, 305 S.C. 227, 407 S.E.2d 644 (1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 938, 117 L.Ed.2d 109 (1992). Therefore, the policymaker is the city council.

7. The City's *written* policy regarding animal control is contained in Ordinances §§ 9–5021—9–5037. These ordinances provide that own-

■ The evidence shows that, according to respondent, her dogs may have been removed from inside her fence and she may have not been told she had only five days in which to identify or redeem the dogs. The evidence further reveals respondent was improperly informed she would have to pay a fine to redeem the dogs. However, none of these facts presented by respondent show there was a *deliberate choice* to harm her or that the City was *deliberately indifferent* to the alleged constitutional violations by Kirkpatrick and the shelter. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipal liability under § 1983 attaches where deliberate choice to follow course of action is made from among various alternatives by official responsible for establishing final policy with respect to subject matter in question); *Moore v. City of Columbia, supra* (municipality may be subjected to liability due to its de facto policies as well as its de jure policies; de facto policies may be established by omissions of municipality or supervisory officials where their unreasonable failure to make rules causes employees to engage in unconstitutional conduct; such omissions are actionable, however, only if constitute "tacit authorization" of or "deliberate indifference" to constitutional violations). Respondent has not presented any evidence to show there is a custom that is so widespread as to have the force of law. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (locating "policy" ensures municipality is held liable only for deprivations resulting from decisions of its legislative body or of those officials whose acts may be said to be those of municipality; similarly, act performed pursuant to "custom" that has not been formally approved by appropriate decisionmaker may fairly subject municipality to liability on theory that relevant practice is so widespread as to have force of law).

---

ers who allow their dogs to run at-large do not have property rights in the dogs and are guilty of a misdemeanor. Further, the keeping of three or more dogs is prohibited without first obtaining an inspection certificate. Any pet found within the city limits in violation of the ordinances may be caught and impounded by city authorities and those impounded animals that are not redeemed within five days may thereafter be destroyed.

Further, respondent has not demonstrated that the City, through deliberate conduct, was the "moving force" behind Kirkpatrick's alleged seizure of the dogs and the shelter's alleged wrongful destruction of the dogs. *See Board of County Commissioners, supra* (plaintiff must also demonstrate that, through its deliberate conduct, municipality was "moving force" behind injury alleged). There is no evidence that would support an inference City either knew or should have known of the events involved in this case or that the acts complained of were part of a pattern of similar acts.

Accordingly, the Court of Appeals erred by reversing the trial court's order granting the City's motion for summary judgment.

## CONCLUSION

We affirm the decision finding the trial court erred by denying respondent's motion to amend the complaint and reverse the decision finding the trial court erred by granting the summary judgment motion.

**AFFIRMED IN PART, REVERSED IN PART.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.