Stanley v

THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Wanda
 Stanley,        Appellant,
 
 
 

v.

 
 
 
 City of Columbia Animal
 Control Department, a/k/a City of Columbia,       
 Respondent.
 
 
 

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No.
2005-UP-481
Submitted June 1, 2005  Filed August 8, 2005

REVERSED AND REMANDED

 
 
 
 M. Baron Stanton, of Columbia,
 for Appellant.
 Dana M. Thye, of Columbia,
 for Respondent.
 
 
 

PER CURIAM:  This appeal
arises after the trial court directed a verdict for the City of Columbia in an
action brought by Wanda Stanley involving allegations that the City unlawfully
detained and euthanized five of her Shar-Pei puppies.  We reverse and
remand for trial.[1]
FACTS
This case has had a tangled
procedural history that includes a prior appeal resulting in a decision by this
court and review by the supreme court, which affirmed in part and reversed in
part our decision.  We adopt the factual summary of the supreme court in Stanley
v. Kirkpatrick, 357 S.C. 169, 172-173, 592 S.E.2d 296, 297-98 (2004), as
included below.
Respondent bred Shar-Pei dogs at her Columbia home.  Due to the complaints of neighbors, the City
fined Respondent several times for operating an unlawful kennel and for keeping
unlicensed pets.  Officer Kevin Kirkpatrick issued at least three of these
citations.
Kirkpatrick testified he received a
complaint in July 1996.  As a result, he, along with Officer H.P.
Stephenson of the Humane Society, visited Respondents home and saw fifteen
Shar-Pei dogs inside the house and in the backyard, which was enclosed with a
metal gate.  On July 8, 1996, Stephenson and Kirkpatrick returned to the
residence in an effort to acquire details for a search warrant.  On this
visit, they saw five female Shar-Pei puppies running around the street and in
the neighbors yard.  They captured the at-large puppies.
The following day, Kirkpatrick
served a warrant on Respondent, citing her for violating a city ordinance
restricting the number of dogs per residence.  He informed Respondent he
had captured five puppies that were taken to the Animal Services Shelter (the
shelter) and that she needed to contact the shelter to
identify the puppies.  While Kirkpatrick assumed the dogs were Respondents,
he testified that because the dogs were picked up at-large, there was still a
question whether they were truly hers.
In her deposition, Respondent
disputed the events as related by Kirkpatrick and Stephenson.  She
testified she believed Kirkpatrick opened the gate, entered her backyard, and
removed her dogs.[2]  However,
she stated she did not see him open the gate, nor did anyone tell her they saw
him open the gate.  She stated a dog had never escaped from her backyard,
and there was mesh screening around the gate to prevent such an occurrence.
Respondent contacted the shelter and
was informed she would have to pay $129 per dog to redeem them.[3]  Two employees at the shelter testified they
directly informed respondent she had to identify the dogs because the shelter
holds unidentifiable animals for only five days.[4]   Respondent claimed no one told her she had only five
days to retrieve the dogs.
Because no one came to the shelter
to identify the dogs, they were euthanized.  They were found to be
unsuitable for adoption because they had a skin problem and were aggressive
towards each other and the handlers.
Respondent filed a § 1983 claim
against the City.[5]  She later
filed a motion to amend the complaint to add state tort claims to her § 1983
lawsuit.  The City filed a motion for summary judgment.  The trial
court denied the motion to amend and granted the Citys motion for summary
judgment.

The Court of Appeals reversed the trial courts denial of Respondents
motion to amend her complaint to add state tort claims and reversed the trial
courts order granting summary judgment on the § 1983 claim.  The
supreme court affirmed by also finding the trial court had in fact erred by
denying Respondents motion to amend the complaint.  Id.  at 178, 592 S.E.2d at 300. 
However, the supreme court reversed on the granting of the summary judgment on
the § 1983 claim.  Id. 
The court determined Respondent was unable to show any official policy or custom
existed that caused her to suffer a denial of a constitutional right.  Id. at 175-178, 592 S.E.2d at 299-300.
As a result of the supreme court
decision, the case was remanded and Stanley
was allowed to amend the complaint to add causes of action for trespass to land,
trespass to chattels, and conversion.  The case proceeded to trial. 
After Stanleys case-in-chief, the court granted a directed verdict for
the City on the grounds:

 the evidence in the light most
 favorable to the plaintiff is that she did not believe Mr. Kirkpatricks
 statement that the dogs were wriggling out from under the fence because her
  she considered her yard secure and they had never escaped before;
 therefore, he must have let them out.  I find that is  and he
 ultimately ended up with possession, so therefore, he had to let them
 out.  I find thats speculative and conjectural.  That is not
 sufficient circumstantial evidence or direct evidence to establish that he
 opened the gate or that he did anything which  to allow the dogs to come
 out of the fenced area; therefore, as to the trespass Im directing a
 verdict. 

Regarding the claim of conversion,
the court also granted a directed verdict because Stanley did nothing more than
call and inquire after the puppies.  The court says a claim of ownership is
required and suggests that Stanleys actions do not fulfill the
requirement.  Stanley appeals.
STANDARD OF REVIEW
When the trial court rules on a
motion for directed verdict, it is required to view the evidence and the
inferences which reasonably can be drawn in the light most favorable to the
party opposing the motion and to deny the motion where either the evidence
yields more than one inference or its inference is in doubt.  Harvey v.
Strickland, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002).  When
considering directed verdict motions, neither the trial court nor the appellate
court has authority to decide credibility issues or to resolve conflicts in the
testimony or evidence.  Id.  In essence, we must
determine whether a verdict for a party opposing the motion would be reasonably
possible under the facts as liberally construed in his favor.  Bultman
v. Barber, 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981).  If the
evidence is susceptible to more than one reasonable inference, the case should
be submitted to the jury.  Quesinberry v. Rouppasong, 331 S.C.
589, 594, 503 S.E.2d 717, 720 (1998).
LAW AND DISCUSSION

 I.    Trespass

Stanley argues the trial court erred
in granting a directed verdict on the trespass cause of action.  We agree.
In delivering its ruling, the trial
judge stated:

 the evidence in the light most
 favorable to the plaintiff is that she did not believe Mr. Kirkpatricks
 statement that the dogs were wriggling out from under the fence because her
  she considered her yard secure and they had never escaped before;
 therefore, he must have let them out. . . .  I find thats speculative
 and conjectural.  That is not sufficient circumstantial evidence or
 direct evidence to establish that he opened the gate or that he did anything .
 . . to allow the dogs to come out of the fenced area. 

(emphasis added).
However, if there is even a mere scintilla
of evidence tending to prove the allegations of the complaints, the motion
must be denied.  Jamison v. The Pantry, Inc., 301 S.C. 443, 444, 392
S.E.2d 474, 475 (Ct. App. 1990).  Because a direction of a verdict is
not favored, a case must be clear, certain, or indisputable to warrant a trial
judges granting of a motion seeking a directed verdict.  Id. 
This is the same standard this court employs when reviewing a grant of summary
judgment. 
We previously ruled that summary
judgment was inappropriate because Stanley provided evidence by deposition
testimony and sworn affidavits that the puppies were in the fenced back yard,
that they were of a size unable to go under the fence, and that the fence was
reinforced with mesh.  Stanley v. Kirkpatrick, Op. No.
2001-UP-016 (S.C.Ct.App. refiled Oct. 3, 2001).  Without ruling on how this
prior decision impacts the law of the case, we note its findings are still
true. 
Stanley testified at trial that the
puppies were in the fenced backyard, that they were of a size unable to go under
the fence, and that the fence was reinforced with mesh.  Additionally,
Stanley testified it was unlikely a Shar-Pei would dig under the fence, and it
was unlikely the puppies would have left their mother, who was in the
backyard.  Finally, Stanley presented evidence that although she received
other animal control violation tickets from Officer Kirkpatrick, she had not
been ticketed for allowing dogs to run at-large. 
This evidence establishes Stanleys
belief was not based on mere conjecture or speculation but ascertainable
circumstantial evidence.  Importantly, Circumstantial evidence is proof
of a chain of facts and circumstances indicating the existence of a fact. 
The law makes absolutely no distinction between the weight or value to be given
to either direct or circumstantial evidence.  Moriarty v. Garden
Sanctuary Church of God, 341 S.C. 320, 337, 534 S.E.2d 672, 680
(2000).  Because there is circumstantial evidence tending to prove the
allegations of the complaint, the trial court erred in granting a directed
verdict as to the trespass cause of action.

 II.   Conversion

Stanley also argues the trial court
erred in directing a verdict on the conversion cause of action.  We agree.
Conversion is the unauthorized
assumption and exercise of the right of ownership over goods or personal
chattels belonging to another, to the alteration of the condition or the
exclusion of the owners rights.  Crane v. Citicorp Natl Servs.,
Inc., 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993) (citations omitted). 
To establish the tort of conversion, it is essential that the plaintiff
establish either title to or right to the possession of the personal property. 
Id.  Conversion is a wrongful act which emanates by either a
wrongful taking or wrongful detention.  Regions Bank v. Schmauch,
354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct. App. 2003).  Since
conversion is a wrongful act, it cannot arise from the exercise of a legal
right.  Castell v. Stephenson Finance Co., 244 S.C. 45, 51, 135
S.E.2d 311, 313 (1964) (citation omitted).
We have already stated there was
sufficient evidence to present the trespass cause of action to the jury because
of evidence that Kirkpatrick opened the gate and removed the dogs.  This
same evidence makes it improper to direct a verdict on the conversion cause of
action because it is circumstantial evidence from which the jury might find
Kirkpatrick wrongfully took or detained the puppies.
CONCLUSION
For the reasons discussed above, the
order of the trial court is
REVERSED AND REMANDED.
GOOLSBY, HUFF, and KITTREDGE, JJ.,
concur.

[1] We decide this case without oral argument pursuant to Rule 215,
SCACR.
[2] Respondent further testified that, at a prior court hearing on her
citations, Kirkpatrick told her, Ill find your dogs.  Kirkpatrick
denied the conversation.
[3] This fee included a $76 fine for the puppy being at-large, a $20
impound fee, $28 for spaying, and $5 for a future rabies vaccination.
[4] Section 9-5027(a) of the Columbia City Code states, [I]mpounded
animals not redeemed within five (5) days may thereafter be humanely destroyed
by the animal control division.
[5] 42 U.S.C. § 1983 provides,
in part: Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State . . . , subjects, or causes to be subjected, any
citizen of the United States . . . to the deprivation of any rights, privileges,
or immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress.