**Gina SOX, a minor, by her Guardian ad Litem, Julia Gladys Fox, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. AC/403.**

United States District Court
E. D. South Carolina,
Columbia Division.

Oct. 7, 1960.

George Bell Timmerman, Jr., A. Frank Lever, Jr., Lexington, S. C., William H. Duncan, W. Columbia, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., George E. Lewis, Asst. U. S. Atty., Columbia, S. C., for defendant.

WYCHE, District Judge.

This action is brought against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346. The plaintiff, a minor, by her guardian ad litem, seeks to recover for prenatal injuries allegedly sustained by her when an automobile in which her mother was riding as a passenger was struck by a United States Army automobile driven by a military policeman. The government has admitted by stipulation that it is liable for any injuries which the infant may have sustained in the collision but denies that any injuries were sustained, thus leaving for determination whether the infant was injured by the accident and if so to what extent.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A. I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

Findings of Fact.

1. The infant plaintiff, a girl, was born on December 19, 1957.

2. The collision occurred on September 21, 1957, when an army automobile negligently struck the right side of an automobile in which the parents of the infant were riding as passengers. The parents, both of whom were injured in the collision, were seated on the back seat, with the mother of the infant being seated on the right side where the impact occurred. That side of the automobile in which they were riding was severely damaged. A photograph showing the damage was offered in evidence.

3. The mother of the infant plaintiff sustained five fractures of the pelvis. At that time, she was in the sixth month of pregnancy with an unborn child that is now the infant plaintiff. The head of the unborn child was then in the area of the mother's pelvis, that being the area where the mother was injured. X-rays of the mother's injuries taken at the hospital on the day of the accident clearly show the position of the head of the unborn child. These x-rays were exhibited to the Court and positive prints were identified and offered in evidence.

4. Because of the damage to the mother's pelvis, delivery of the infant on December 19, 1957, was by caesarean section.

5. The infant was delivered in the ninth month of her mother's pregnancy but weighed only four pounds and eleven or twelve ounces. It is uncontradicted that although the infant was delivered at the full term of nine months she was born a premature baby. The child has severe brain damage and injury which is permanent.

6. Because of the brain damage and injury, the infant is physically and mentally under-developed. She cannot see, cannot understand, cannot use her arms, and hands, cannot use her legs and feet, cannot stand or walk, cannot speak, cannot voluntarily hold up her head, and has no muscular control. She does, however, respond to sound and touch. She cannot eat as a normal child would eat, necessitating nipples that have been used and which are extremely soft in order to feed her from a bottle.

7. I observed the child during the trial, she being at that time about two and three-fourths years old. Her head, limbs and body appeared well formed but it was obvious that the child was completely helpless and entirely dependent upon others. The child was exhibited to the Court both in her mother's arms and in a wheel chair that had been specially fitted out for the child by the Crippled Children's Society. Photographs showing the child as seen by the Court in her mother's arms and in the special chair were offered in evidence. It was also observed that the child had to be fastened in the chair and that her head had a tendency to flop over unless held by another person or braced by an artificial fitting.

8. From a consideration of the evidence, I am convinced that this child

was injured in the collision and as a result has been severely impaired.

9. I am also convinced that her impairment is permanent. She will never be able to see, to talk, to think for herself, to use her limbs, to control the use of her muscles, to protect herself from harm by accident or otherwise, to play and learn like other children, to grow up and marry and have a home and children of her own, to earn a livelihood, or to experience in any way the enjoyment of living; yet she lives. Her injury has affected her life in every way.

10. I am further convinced that she is and will throughout her life-time continue to be entirely helpless and completely dependent upon others. Her condition will require constant and competent care and attention. This should include periodic examinations by a competent physician. Unlike other children, she is unable to voice symptoms of illness, although she can and does fret at times like an infant too young to talk.

11. Since birth, the child has been nursed constantly by her mother without any help except for the kindness of a neighbor who has voluntarily and gratuitously assisted the mother from time to time.

12. The mother is herself a minor being only twenty years of age. The father is now twenty-two years old. Neither parent has any special training. Neither finished high school. The father is employed as a wage earner but makes only $1.10 an hour cutting plastic. The mother's time is required by the child. They own their home but are still paying for it. It is quite obvious that they are unable to finance adequate care for their child.

13. It is uncontradicted that institutional care would cost approximately four hundred dollars a month but would not include individual nursing care. This would also require separating the child from her mother and father. In addition, it is uncontradicted that there is no private institution in this State that could care for the child.

14. It is also uncontradicted that the pay rate of licensed practical nurses is $1.25 per hour, they being the least qualified of those licensed to render nursing service in this State. The recommended number of hours of nursing is eight hours a day. Twelve hours a day is permissible but not recommended. Any period longer than that is permissible but is recommended only in the event of an emergency such as a shortage of available nurses to meet recommended standards. In any event, the pay rate of $1.25 an hour remains constant per nurse whether the hours are the recommended number of eight or more so that in a twenty-four hour period the cost would be $30.00, whether there is one nurse sleeping in, or two on twelve-hour shifts, or three on eight-hour shifts.

15. The normal remaining life expectancy of a child two to three years of age is 68.31 years as shown by Life Table for the Total Population, United States; 1949–1951, taken from United States Life Tables 1949–1951, United States Department of Health, Education and Welfare, November 23, 1954, Volume 41, Number 1, pages 8–9. A copy of these Tables were offered in evidence.

16. There are no tables in evidence governing the life expectancy of a child impaired to the extent this child is impaired, and I doubt that there are such tables in existence. Moreover, the testimony as to this child's life expectancy is conflicting. The plaintiff's doctors were of the opinion that with competent care and attention the child should live a normal life expectancy. The government's doctors disagreed in varying degrees. The highest expectancy admitted by any government doctor was a maximum of twenty years but with a probable expectancy lower than that. Another in his opinion predicted her death within a few years. There is no evidence of any damage to the vital organs of the child such as the heart, liver, kidneys, stomach, lungs and so forth. The government's doctors based their opinions as to life expectancy largely upon the child's disability and not upon any defect in vital

organs. However, as the child lives, her body will continue to grow. As it grows, it will become more difficult for the mother to care for the child without more assistance. It seems clear that the child will also require more careful medical attention than would be normally required for a normal child. While no one can say with certainty how long the child will actually live, it seems probably that her life expectancy has been shortened by the accident and yet that with competent and qualified care she can be reasonably expected to live for a number of years.

██ Under these circumstances, my task, like that of the trial Judge in O'Toole v. United States, D.C.D.Del., 140 F.Supp. 672, at page 682, "is to do what any juror would do; i. e., examine all the evidence, consider and weigh it, and then arrive at the best figure I can in order to make an award of damages" in accordance with the law of this State. See, also, O'Toole v. United States, 3 Cir., 242 F.2d 308.

### Conclusions of Law.

1. It is unnecessary to consider the question of liability. As stated in the opening paragraph, the government has agreed by stipulation that it is liable for any injuries sustained by the plaintiff in the collision. Since I have found that the infant was severely injured by the collision, there remains only the question of compensation for her damages.

██ 2. The measure of damages in this case seems to be embraced within three general elements: (a) compensation for the injury and resulting impairment of mind and body, (b) compensation for the cost of care necessitated by the injury and impairment including the cost of probable future care, and (c) deprivation of normal life expectancy.

Compensation for the injury and resulting impairment of mind and body would include the loss of eye-sight, loss of the use of all limbs, loss of the power of speech and loss of the use of faculties, and loss of the capacity for mental and physical development.

Compensation for the cost of probable future care would include medical and nursing care and after minority also the cost of subsistence including adequate food and clothing and adequate and comfortable housing during her probable life expectancy.

██ 3. Considering these elements in the light of the facts as found by me, I am of the opinion that judgment should be entered in favor of the plaintiff against the defendant for the sum of Two Hundred, Sixty Thousand and 00/100 ($260,000.00) Dollars, and costs.

 4. At the close of the government's defense, the government called to the attention of the Court that general releases were obtained from the mother and father in the settlement of suits brought for them. The records show that these cases were brought on behalf of the parents to recover damages only for the personal injuries sustained by them and in no way involved any claim arising by reason of injury to their then unborn infant daughter. It also appears that more than two years have expired since the accident so that any claim arising by reason of injury to the infant that either parent might have had is now barred by the provisions of 28 U.S.C.A. § 2401(b). It is not clear as to why the government called attention to these settlements unless it is the contention of the government that the settlement of the personal injury suits of the parents bars a recovery by the infant for the cost of any medical and nursing care that may be necessitated during its minority by reason of its injuries. If that is the contention of the government, then it is without merit. It is settled law that the primary right of recovery for the cost of medical and nursing care of an injured infant lies with the parents, but it is equally well settled that this right may be waived in favor of a recovery by the infant. The underlying reason for these rules is to prevent double recoveries. It is not to excuse liability. By not asserting within the two-year statutory period any right that they may have had to recover for such cost, the

parents have absolutely and irrevocably waived any right that they may have had in that respect. This does not, however, bar the infant nor does it excuse liability.

It is, therefore, Ordered, That judgment be entered in favor of the plaintiff against the defendant in the sum of Two Hundred, Sixty Thousand and 00/100 ($260,000.00) Dollars, and costs.

It is further Ordered, That the attorneys for the plaintiff be and they are hereby authorized to receive as reasonable attorneys' fees twenty (20) per cent. of the amount of the aforesaid award, to be paid out of but not in addition to the amount of said award.