804 S.E.2d 252

**Angela PATTON, as Next Friend of Alexia L., a minor, Petitioner,**

**v.**

**Gregory A. MILLER, M.D., Rock Hill Gynecological & Obstetrical Associates, P.A. and Amisub of South Carolina, d/b/a Piedmont Medical Center, Respondents.**

**Appellate Case No. 2015-002135**

**Opinion No. 27730**

Supreme Court of South Carolina.

Heard December 14, 2016

Filed July 26, 2017

Rehearing Denied September 27, 2017

the Truth in Lending Act (TILA), and the Real Estate Settlement Procedures Act (RESPA).

472

474

476

John Layton Ruffin, Edward L. Graham, and Diane M. Rodriguez, of Graham Law Firm, PA, all of Florence, for Petitioner.

Ashby W. Davis, of Davis, Snyder, Williford & Lehn, P.A., of Greenville; R. Hawthorne Barrett and Thomas C. Salane, both of Turner Padget Graham & Laney, PA, of Columbia; William U. Gunn and Joshua Tate Thompson, both of Holcombe Bomar, PA, of Columbia, all for Respondents.

JUSTICE FEW:

The question posed in this appeal is whether a minor may bring an action for her own medical expenses. The answer depends on whether she is the "real party in interest," and any dispute over the answer is governed by Rule 17(a) of the South Carolina Rules of Civil Procedure.

## I. Facts and Procedural History

Alexia L. was born on April 5, 2007, at Piedmont Medical Center in Rock Hill. Gregory A. Miller, M.D., was the obstetrician who delivered her. Alexia's mother—Angela Patton—filed a medical malpractice lawsuit in November 2009 against Dr. Miller and the professional association where he practiced, Rock Hill Gynecological & Obstetrical Associates, P.A. Patton filed the lawsuit only in her capacity as Alexia's "next friend." [1] She sought damages from Dr. Miller and Rock Hill Obstetrical for Alexia's injuries and past and future medical expenses.

In March 2012, Patton filed a separate medical malpractice lawsuit against Amisub of South Carolina, which owns and does business as Piedmont Medical Center. She also filed the Amisub lawsuit only in her capacity as Alexia's next friend, and sought the same damages she sought in the first lawsuit. In July 2012, the parties consented to consolidate the two

---

1. "If a minor ... does not have a duly appointed representative he may sue by his next friend...." Rule 17(c), SCRCP.

cases, and Patton—again acting only as Alexia's next friend—filed an amended complaint naming Dr. Miller, Rock Hill Obstetrical, and Amisub as defendants. In the amended complaint, as in the first two, Patton did not make any claim in her individual capacity. The only claims she made were Alexia's claims, which she made in her representative capacity as Alexia's next friend.

Patton's theory of liability was that the defendants—primarily Dr. Miller—"improperly managed the resolution of shoulder dystocia[2] . . . and that such mismanagement caused permanent injury to Alexia's left-sided brachial plexus[3] nerves." Patton sought damages for Alexia's pain and suffering, disability, loss of earning capacity, and other harm she contends resulted from this injury. Patton also sought damages for Alexia's medical expenses.

The fact that Patton brought the claim for medical expenses only in her representative capacity as Alexia's next friend—and not in Patton's own capacity—is at the center of this appeal. Dr. Miller, Rock Hill Obstetrical, and Amisub moved for partial summary judgment on the basis of this fact. They argued the circuit court should dismiss the claim for medical expenses because only a parent—not the child—has the right to recover damages for a minors' medical expenses. The defendants argued, in other words, Patton could recover for Alexia's medical expenses if she sued in her own capacity, but she may not recover them in her capacity as Alexia's representative. The circuit court agreed and granted partial summary judgment to all three defendants. The court found "the minor plaintiff may not maintain a cause of action for [her medical] expenses in her own right."

Patton filed two motions in response to the circuit court's order. First, she filed a motion to alter or amend the summary

---

**2.** Dystocia is the "slow or painful birth of a child." *Dystocia,* BLACK's MEDICAL DICTIONARY (42d ed. 2010). Shoulder dystocia is "a difficult childbirth marked by the inability to deliver the shoulders of the fetus after the head has emerged." J.E. Schmidt, 5 *Attorneys' Dictionary of Medicine* S-141 (Matthew Bender 2016).

**3.** Brachial means "belonging to the upper arm." The brachial plexus is the network of nerves that lies "along the outer side of the armpit" and contains all the nerves to the arm. *Brachial,* BLACK's MEDICAL DICTIONARY (42d ed. 2010); *Plexus,* BLACK's MEDICAL DICTIONARY (42d ed. 2010).

judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. She also filed a motion to amend her complaint pursuant to Rule 15 to "change [her] capacity ... from Next Friend to her individual capacity." She asked that the amendment relate back to the date of her original complaint, as provided for in Rule 15(c). The circuit court denied both motions.

Patton appealed to the court of appeals, which affirmed in an unpublished opinion. *Patton v. Miller*, Op. No. 2015-UP-367, 2015 WL 4467372 (S.C. Ct. App. filed July 22, 2015). We granted Patton's petition for a writ of certiorari to review the court of appeals' decision. We reverse that portion of the circuit court's order that awards partial summary judgment to Dr. Miller and Rock Hill Obstetrical, affirm the award of partial summary judgment to Amisub, and remand to the circuit court.

## II. Rule 17, SCRCP—The Proper Plaintiff

■ By claiming that only a parent—not the child—may bring a claim for the child's medical expenses, the defendants invoked the "real party in interest" requirement of Rule 17(a) of the South Carolina Rules of Civil Procedure, which provides, "Every action shall be prosecuted in the name of the real party in interest." A real party in interest is "the party who, by the substantive law, has the right sought to be enforced. It is ownership of the right sought to be enforced which qualifies one as a real party in interest." *Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220, 746 S.E.2d 478, 481 (Ct. App. 2013); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1541 (3d ed. 2010) (stating Rule 17(a) provides "that the action should be brought in the name of the party who possesses the substantive right being asserted under the applicable law...."); 6 *Cyclopedia of Federal Procedure* § 21.7 (3d ed., rev. 2017) ("The 'real party in interest' ... is defined as the person holding the substantive right to be enforced, and not necessarily the person who will ultimately benefit from the recovery.").

The requirement that an action must be brought by the real party in interest is not a new requirement. Section 134 of our

1867 Code provided, "Every action must be prosecuted in the name of the real party in interest. . . ." S.C. Code § 134 (1867). The "real party in interest" requirement can be found in all subsequent versions of the Code including the 1976 Code. S.C. Code Ann. § 15-5-70 (1976) (repealed 1985). As the Reporter's Note to Rule 17(a) indicates, "The first sentence . . . [is] substantially the same as Code §§ 15-5-70 and 80."

The defendants and the circuit court rely primarily on two cases in which we applied the real party in interest requirement to a claim for a minor's medical expenses. In *Hughey v. Ausborn*, 249 S.C. 470, 154 S.E.2d 839 (1967), we stated "the amount paid for medical care and treatment by the parent is not an element of damage" in a cause of action brought by the minor, but rather "the parent has a cause of action for the recovery of the medical expenses which he has incurred for the care and treatment of such minor." 249 S.C. at 475, 154 S.E.2d at 841; *see* S.C. Code § 10-207 (1962) (stating the real party in interest requirement). In *Tucker v. Buffalo Cotton Mills*, 76 S.C. 539, 57 S.E. 626 (1907), we stated a "father suing merely as guardian ad litem for injuries to his infant child cannot recover for [the child's medical] expenses" because "the father himself is personally liable" to pay those expenses. 76 S.C. at 542, 57 S.E. at 627; *see* Code of Civil Procedure of South Carolina § 132 (1902) (stating the real party in interest requirement). *See also Hughey*, 249 S.C. at 476, 154 S.E.2d at 841 (explaining that the basis of the parent's right to recover the damages is the parent's obligation to pay the child's medical expenses); 67A C.J.S. *Parent and Child* § 352 (2013) ("The parental right to recover expenses when a child is injured stems from the parents' legal obligation to support a child."). Applying the real party in interest requirement to the facts of those cases, we recognized that the legal obligation to pay a medical bill renders the person who holds that obligation the proper party to bring a claim, or the "real party in interest." This is the principle of law relied on by the defendants and the circuit court, and it is the same principle embodied in the definition of real party in interest set forth in *Draper*.

We must determine, therefore, whether Patton—in her capacity as Alexia's next friend and not in her own capacity— meets the real party in interest requirement on her claim for

Alexia's medical expenses. In particular, we must determine whether Patton's representative claim for Alexia's medical expenses is consistent with our application of the real party in interest requirement to similar claims in *Hughey* and *Tucker*. We begin our analysis with Patton's description in her briefs to the court of appeals and this Court of the medical expenses she sought to recover:

> Following her injuries, Alexia has received necessary and proper treatment from a host of healthcare providers, including a nerve resection surgery. Alexia will need additional surgeries and other treatment continuing until her eighteenth birthday, as well as continued treatment after she reaches the age of majority. Accordingly, she will incur future medical bills during her entire lifetime.

These medical expenses fall into three categories. First, Patton seeks to recover for medical expenses that will have been incurred at the time of trial. These include the cost of the nerve resection surgery that has already been performed. Second, Patton seeks to recover for expenses that will be incurred in the future, but before Alexia turns eighteen. Third, Patton seeks to recover for expenses Alexia will incur after she reaches the age of eighteen, which Patton contends Alexia will incur "during her entire lifetime."

■ Applying *Hughey*, *Tucker*, and *Draper* to the third category of medical expenses Patton seeks to recover—those Alexia will incur after turning eighteen—Alexia is clearly the real party in interest on a claim for those expenses. At that time she will be an adult, and the medical services provider may legally seek payment for the services from Alexia herself. Because Alexia will be obligated to pay the bills for those services, she owns the right to recover them as damages. The circuit court apparently recognized this, and specifically granted summary judgment only on "Plaintiff's claims for her own medical or injury-related expenses incurred to date, and to be incurred during her minority." Thus, Patton—acting on behalf of Alexia and not in her individual capacity—is the real party in interest for future medical expenses Alexia will incur after she turns eighteen, and properly brought the claim.

■ Turning to the second category of expenses Patton seeks to recover—those incurred between the time of trial and

Alexia's eighteenth birthday—*Hughey*, *Tucker*, and *Draper* require that we determine who has the legal obligation to pay those expenses, which in turn informs us who owns the right to recover them as damages, and thus who meets the real party in interest requirement. Patton—in her individual capacity—is a real party in interest. Under South Carolina law, Patton's parental responsibilities include the legal obligation to pay her child's medical expenses. S.C. Code Ann. §§ 63-5-20 & -30 (2010). Because of that obligation, Patton owns a substantive right to recover damages for those expenses. Therefore, Patton—in her individual capacity—satisfies the Rule 17(a) requirement that the claim be brought by the real party in interest. *Draper*, 405 S.C. at 220, 746 S.E.2d at 481.

The question before us, however, is whether the circuit court correctly concluded that Patton—in her representative capacity—is not the real party in interest. As the following discussion demonstrates, the analysis of whether a representative qualifies as the real party in interest for future medical expenses is not as simple as the analysis for past medical expenses was in 1907 in *Tucker* and in 1967 in *Hughey*. In fact, none of the cases relied on by the defendants or the circuit court involved claims for future medical expenses. *Cf. Sox v. United States*, 187 F.Supp. 465, 469-70 (E.D.S.C. 1960) (permitting a minor to recover her own future, pre-majority, medical expenses).

If Patton recovers Alexia's future medical expenses, for any recovery above a minimal amount, the funds paid by these defendants must be paid to a conservator, or some other adult fiduciary representative. *See* S.C. Code Ann. § 62-5-433(B)(3) (2009) (requiring payment of settlement funds to a conservator); S.C. Code Ann. § 62-5-401 (Supp. 2016) (permitting the appointment of a conservator for a "minor [who] owns money or property that requires management or protection").[4] The "conservator [must] act as a fiduciary," and thus the funds must remain in the custody of the conservator until they are used for Alexia's benefit, or until she turns eighteen. S.C. Code Ann. § 62-5-417 (2009). For medical expenses actually

---

4. *See also* S.C. Code Ann. § 62-5-103 (2009) ("Facility of payment or delivery"); S.C. Code Ann. § 62-5-409 (2009) ("Protective arrangements and single transactions authorized").

incurred while Alexia is a minor, the conservator has a legal obligation to pay them. S.C. Code Ann. § 62-5-428(a)(1) (Supp. 2016).

If Patton is now or later becomes Alexia's conservator, then her fiduciary obligation to pay Alexia's medical expenses will make her the real party in interest—in her representative capacity. However, whether a particular plaintiff is a real party in interest must be determined at the time of filing, and the identity of the conservator is often not known until the time a recovery is made. It is clear, however, that Alexia's representative—or conservator—will have a legal obligation to pay future medical expenses before Alexia's eighteenth birthday. Under *Hughey*, *Tucker*, and *Draper*, therefore, the conservator's legal obligation to pay the expenses renders the representative who brought the action a real party in interest.

█ Turning to the first category of medical expenses— those already incurred at the time of trial—Patton is a real party in interest in her individual capacity because of her obligation to pay them. §§ 63-5-20 & -30. The circuit court correctly concluded, therefore, that Patton may sue in her individual capacity to recover medical expenses that have already been paid for the care and treatment of Alexia.

The circuit court's partial summary judgment order, however, was not based on that conclusion. Rather, the order was based on the circuit court's categorical determination that Patton may not sue for those expenses in any representative capacity. The circuit court stated, "Neither of her parents have sued individually to recover [Alexia's medical] expenses, and the minor plaintiff may not maintain a cause of action for [her medical] expenses in her own right." To determine whether the circuit court's statement was correct, and thus whether it correctly granted partial summary judgment based on it, *Hughey*, *Tucker*, and *Draper* require that we analyze whether Patton—in her representative capacity—has a legal obligation to pay the medical bills.

█ As we did with the second category of expenses, we question whether this analysis may be conducted in 2017 with the simplicity with which we analyzed it in *Tucker* and *Hughey*. To illustrate this point, we turn to Patton's representation to the circuit court that "Alexia is covered by Medicaid, which has paid vast sums on her behalf for medical care." To

the extent Alexia's medical bills were paid by Medicaid, they were not paid by either of her parents. In both *Tucker* and *Hughey*, the injured child's father paid the medical bills.[5] *Tucker*, 76 S.C. at 542, 57 S.E. at 627; *Hughey*, 249 S.C. at 475, 154 S.E.2d at 841. The collateral source rule preserves the parent's right to recover the damages, even though the parent did not pay the medical expenses.[6] However, federal and state law provides Medicaid an automatic right of subrogation. *See generally* 42 U.S.C. § 1395y(b)(2) (2012 & Supp. II 2014); 42 C.F.R. § 411.24(e) & (g) (2016); S.C. Code Ann. § 43-7-430 (2015) (collectively defining federal subrogation rights to third-party recovery of medical expenses paid by Medicaid, and the Medicaid recipient's legal obligation to repay). A similar right of subrogation often exists pursuant to the insurance contract when the medical expenses are paid by a private insurer. *See* S.C. Code Ann. § 38-71-190 (2015) ("Any policy or contract of accident and health insurance issued in this State may include provision for subrogation by the insurer to the insured's right of recovery against a liable third party. . . ."). Therefore, a child's representative who seeks damages for a child's medical expenses that were paid by Medicaid or some other insurer is almost certainly under a legal duty to reimburse the actual payor for at least part of the recovery. In this scenario, the minor's representative has a legitimate claim that she is a real party in interest. In other scenarios, such as when there is no third-party payor and the medical expenses were actually paid by a parent, there may be no right of subrogation, and the representative has no obligation for reimbursement. In such a situation, the parent may be the only real party in interest.[7]

---

5. Medicaid did not exist before July 30, 1965. Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (enacted July 30, 1965). Therefore, it could not have been a factor in *Tucker*. In *Hughey*, the minor was injured on March 10, 1965 and the case was tried in May 1966. 249 S.C. at 474, 154 S.E.2d at 840. There is no indication any of her expenses were paid by Medicaid.

6. "The collateral source rule provides 'that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the damages owed by the wrongdoer.'" *Covington v. George*, 359 S.C. 100, 103, 597 S.E.2d 142, 144 (2004).

7. Rule 17(a) refers to "the" real party in interest. It is possible, however, that there may be more than one proper party to bring a

The circuit court analyzed the real party in interest question on a motion for partial summary judgment under Rule 56 of the South Carolina Rules of Civil Procedure. Rule 56(c) provides that summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. The uncertainties discussed above cause us to doubt whether it is appropriate to enter summary judgment on the question of whether a particular plaintiff is a real party in interest. The circuit court did not consider any of this uncertainty. Rather, the circuit court applied what it considered to be a categorical principle of law that a minor may not recover her own medical expenses.

■ However, this Court has not applied *Hughey* and *Tucker* categorically, and we have not held that a minor may never recover her own medical bills. To the contrary, in *Johnston v. Bagger*, 151 S.C. 537, 149 S.E. 241 (1929), we permitted it. The plaintiff in *Johnston* was the father acting only as the child's guardian ad litem—not in his individual capacity. 151 S.C. at 539, 149 S.E. at 242. The evidence indicated the father "actually paid ... $45" toward the child's medical bills, which totaled "approximately $1,000." 151 S.C. at 541, 149 S.E. at 243. As to the unpaid bills, the father testified he "had not been able to pay these bills, and ... in all likelihood he never will be able to make the payments." *Id.* The appellant, citing *Tucker*, claimed the trial court erred in "that the jury were permitted to consider as an element of damages sums of money paid out by the father of the infant." *Id.* We permitted the bulk of the jury verdict in favor of the minor to stand, despite the fact the damages were for her own medical expenses. 151 S.C. at 542, 149 S.E. at 243.

---

claim. To illustrate, consider that two divorced parents with joint legal custody seek to bring a claim for their minor child's medical expenses. If one parent paid all of a child's medical bills out of pocket, and the other parent paid none, the paying parent would appear to be the only proper party on a claim for the child's past medical bills. If each parent paid half, each parent would appear to be the proper party on that parent's claim to recover the bills that parent paid. However, if neither parent paid the bills, nor was there any insurance, then both parents would remain under a legal obligation to pay the bills. §§ 63-5-20 & -30. In this scenario, under *Hughey, Tucker,* and *Draper,* both parents would separately meet the Rule 17(a) real party in interest requirement.

Other courts have recognized that there is no categorical prohibition against a minor recovering her own medical bills. In *McNeill v. United States*, 519 F.Supp. 283 (D.S.C. 1981), the plaintiff filed suit only in his capacity as the legal representative of a minor. 519 F.Supp. at 284. "The parents . . . did not institute suit" and the statute of limitations "expired." *Id.* The court explained, "The issue of [the minor] being able to collect for his own medical expenses was hotly contested" because the parents "have not filed suit, and the time when suit could be filed is past." 519 F.Supp. at 290. Relying on South Carolina law, the district court in *McNeil* stated, "Medical expenses on behalf of a child are *usually* included in a parent's cause of action." *Id.* (emphasis added) (citing *Tucker*, *Hughey*, and *Kapuschinsky v. United States*, 259 F.Supp. 1, 7 (D.S.C. 1966)). The district court went on to explain that "this general rule is not an absolute bar" to a child recovering his own medical expenses, and awarded damages for those expenses to the child through his legal representative. *Id.*

The district court also awarded a minor damages for his own medical expenses in *Sox.* 187 F.Supp. at 469-70. The court explained that the injured child's parents previously brought their own lawsuits for their own damages and settled those suits. 187 F.Supp. at 469. Subsequently, the district court heard the child's claim for "prenatal injuries," brought "by her guardian ad litem." 187 F.Supp. at 467. The child's damages claim included "compensation for the cost of care necessitated by the injury and impairment including the cost of probable future care." 187 F.Supp. at 469. The district court stated it is "settled law that the primary right of recovery . . . lies with the parents," but then found "it is equally well settled that this right may be waived in favor of a recovery by the infant." *Id.* The district court observed, "The underlying reason for these rules is to prevent double recoveries. It is not to excuse liability." *Id.* The court then held the parents' failure to assert the claim for medical expenses amounted to a waiver of the parents' claim, and awarded the child damages—through his representative—for the medical costs. 187 F.Supp. at 469-70.

Our analysis of Patton's three categories of claims, our holding in *Johnston* allowing a minor's claim for her own medical expenses to stand, and the district court's reasoning in *McNeil* and *Sox* demonstrate that the summary judgment

procedure of Rule 56 is not appropriate for resolving a dispute over the identity of the real party in interest. As Professor Flanagan explained years ago, "motions that do not go to the merits are not appropriately classified as summary judgment." James F. Flanagan, *South Carolina Civil Procedure* 445 (2d ed. 1996). As we will explain, the circuit court should have analyzed the issue under the Rule the defendants invoked when they claimed Patton as representative was the wrong party to bring the claim for Alexia's medical expenses—Rule 17(a) of the South Carolina Rules of Civil Procedure. *See Jaramillo v. Burkhart*, 999 F.2d 1241, 1246 (8th Cir. 1993) (holding in an indistinguishable scenario that partial summary judgment in favor of the defendants was improper and the issue should have been resolved pursuant to Rule 17(a)).

## III. Rule 17(a), SCRCP—Disputes Over the Real Party in Interest

 Under Rule 17(a), the definition of the proper party is the same as it has always been—the proper party is any "real party in interest." As Judge Bell observed in *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47, 416 S.E.2d 655 (Ct. App. 1992), "The adoption of the South Carolina Rules of Civil Procedure has not changed the law. Where, as here, the named plaintiff has suffered an actionable loss at the hand of the defendant, he is a real party in interest and the requirement of Rule 17(a) is met." 308 S.C. at 62, 416 S.E.2d at 665.

However, when the question is how to resolve a dispute as to whether a plaintiff is the real party in interest, the procedure we follow for resolving that dispute changed significantly under Rule 17(a). Formerly, the failure to bring suit in the name of the real party in interest was a jurisdictional failure requiring dismissal of the lawsuit. *See Wilson v. Gibbes Mach. Co.*, 189 S.C. 426, 430, 1 S.E.2d 490, 492 (1939) (stating "unless the real party in interest institutes the suit and is before the Court, the Court is without jurisdiction" (citing *Hodges v. Lake Summit Co.*, 155 S.C. 436, 447-48, 152 S.E. 658, 662 (1930))). Under the Rules of Civil Procedure, however, it is improper to immediately dismiss a lawsuit simply because it was not brought in the name of the real party in interest. Rule 17(a) provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after objection, for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Rule 17(a), SCRCP.

The purpose of this provision is to avoid precisely what occurred here—the unnecessary procedural dismissal of a lawsuit the court should resolve on the merits. As the Reporter's Note to the rule indicates, this sentence "is intended to prevent forfeiture in those cases in which the determination of the proper party to sue is difficult or when there has been an honest mistake." *See also* 6A Wright, Miller & Kane, *supra,* at § 1541 (stating the last sentence of Rule 17(a) was added "to provide that the failure to join the real party in interest at the commencement of the action does not require dismissal").

 Therefore, the circuit court in this case erred by dismissing Patton's claims for Alexia's medical expenses under Rule 56—summary judgment. Rather, the court should have resolved the dispute under Rule 17(a), which provides three mechanisms to avoid forfeiture: "ratification, joinder, or substitution." In this case, Patton attempted to use all three mechanisms. First, she attempted ratification by arguing in her Rule 59(e) motion that she "assigned and waived her right to recover tort-related pre-majority medical expenses in favor of her child, Alexia." Ratification under Rule 17(a) is the formal approval by the proper party of another party bringing the action. In this scenario, Patton is both parties. It is impossible that Patton—in her individual capacity—did not approve of the claim she made in her representative capacity. Her Rule 59(e) motion was the formal expression of that approval—ratification. Patton also attempted joinder and substitution by moving to amend her complaint. She attached to her Rule 15 motion to amend a proposed "amended pleading [that] changes the capacity in which Angela Patton [sues] from Next Friend to her individual capacity."

The defendants contend that any argument under Rule 17(a) is not preserved for our review because Patton never specifically mentioned Rule 17. We find this argument troubling. It was the defendants who first invoked the Rule 17(a) requirement that "Every action shall be prosecuted in the name of the real party in interest" by claiming Patton in her representative capacity was not the proper party to bring the claim for Alexia's medical expenses. In doing so, it was the defendants who first failed to mention Rule 17. While Patton also did not specifically rely on Rule 17, she did specifically ask to take advantage of each of the three provisions contained in Rule 17(a) to address the alleged failure to bring a claim by the correct party: "ratification, joinder, [and] substitution." The provision upon which the defendant sought partial summary judgment and the provision upon which Patton defended the motion are both expressed in Rule 17(a), in adjoining sentences. It is not possible to address the issue of who is the proper party to bring a claim without addressing Rule 17(a). As we will discuss more fully in section IV explaining our analysis under Rule 15 of the South Carolina Rules of Civil Procedure, the Rules were never intended to trap a party simply for not using the proper words or rule number to describe the applicable legal principal. This is particularly true when the trap was set by the opposing parties who themselves did not properly name the applicable principle.

## IV. Rule 15, SCRCP

In both her Rule 59(e) motion and her motion to amend the complaint, Patton did specifically rely on Rule 15 of the South Carolina Rules of Civil Procedure, and particularly the relation back provisions of Rule 15(c). As we will explain, we reach the same conclusion under Rule 15 that the circuit court should have reached under Rule 17.

### A. Rule 15(a)

Rule 15(a) provides that when a party asks to amend his pleading, "leave shall be freely given when justice so requires and does not prejudice any other party." Rule 15(a), SCRCP. "This rule strongly favors amendments and the court is encouraged to freely grant leave to amend." *Parker v. Spartanburg Sanitary Sewer Dist.*, 362 S.C. 276, 286, 607

S.E.2d 711, 717 (Ct. App. 2005) (citing *Jarrell v. Seaboard Sys. R.R., Inc.*, 294 S.C. 183, 186, 363 S.E.2d 398, 399 (Ct. App. 1987)). "Rule 15(a) is substantially the same as the Federal Rule," Rule 15(a), SCRCP notes, and the Supreme Court of the United States has referred to the Rule's "freely given" provision as a "mandate" that "is to be heeded," *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962). The *Foman* Court continued:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* (citing Fed. R. Civ. P. 15(a)); *accord Forrester v. Smith & Steele Builders, Inc.*, 295 S.C. 504, 507, 369 S.E.2d 156, 158 (Ct. App. 1988).

In this case, the circuit court never considered Rule 15(a). While we have consistently held that a circuit court's ruling on a Rule 15 motion to amend is within its discretion,[8] a court's failure to exercise its discretion is itself an abuse of discretion. *State v. Hawes*, 411 S.C. 188, 191, 767 S.E.2d 707, 708 (2015) (quoting *Samples v. Mitchell*, 329 S.C. 105, 114, 495 S.E.2d 213, 218 (Ct. App. 1997)). Under Rule 15(a), the circuit court should have considered whether the defendants were prejudiced by the amendment, or whether there was some other substantial reason to deny it. Instead, the circuit court denied the motion to amend based solely on its mistaken belief that the amendments could not relate back under Rule 15(c). The circuit court thus denied the motion to amend the complaint on its perception of the merits of the amended claims, not under the criteria for amendment the court was required to consider under Rule 15(a). This was

---

8. *See, e.g., Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 632, 743 S.E.2d 808, 812 (2013) ("A motion to amend is within the sound discretion of the trial judge. . . ." (citing *Foggie v. CSX Transp., Inc.*, 315 S.C. 17, 22, 431 S.E.2d 587, 590 (1993))).

error, regardless of the soundness of the Rule 15(c) analysis. *See Tanner v. Florence Cty. Treasurer*, 336 S.C. 552, 558-60, 521 S.E.2d 153, 156-57 (1999) (analogizing a Rule 15(d) motion to supplement a complaint to a motion to amend a complaint under Rule 15(c) and finding the trial court erred in denying the plaintiff's motion to supplement his complaint because the trial court should not have relied on the merits-related question of whether the defendant was immune under the Tort Claims Act). *Cf.* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (3d ed. 2010) (stating "numerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied").

 The record before us contains no basis for a finding of prejudice under Rule 15(a) because the defendants did not argue prejudice [9] and the circuit court did not conduct a prejudice analysis. At oral argument, however, the defendants argued,

> The prejudice, Your Honor, is . . . essentially allowing a way around the rule that was in place. The rule that they could have followed. The rule that is not hard to follow. Certainly no[ ] . . . reason has been given as to why it wasn't followed in this case. And so it is allowing this claim to come in from some, essentially from someone who did not pursue it originally, but could have. And that is the problem. We have never had an explanation at any of the levels as to why the rule was not followed.

We find the argument betrays a misunderstanding of prejudice under Rule 15. The prejudice contemplated in Rule 15 is not that the non-moving party is forced to defend the merits of a valid claim. Rule 15 prejudice is some result flowing from the amendment that puts the non-moving party at a disadvantage in defending the merits, which disadvantage the party would not have faced if the amended claim had been included in the original pleading or a timely motion to amend. *See Lee*

---

9. "The burden is . . . on the party opposing the motion to show how it is prejudiced." *Stanley v. Kirkpatrick*, 357 S.C. 169, 175, 592 S.E.2d 296, 298 (2004).

*v. Bunch*, 373 S.C. 654, 661, 647 S.E.2d 197, 201 (2007) ("The prejudice that would warrant denial of a motion to amend the pleadings is a lack of notice that a new issue is to be tried and a lack of opportunity to refute it." (citing *Collins Entm't, Inc. v. White*, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct. App. 2005))); *Holland ex rel. Knox v. Morbark, Inc.*, 407 S.C. 227, 235-36, 754 S.E.2d 714, 719 (Ct. App. 2014) (affirming the denial of a proposed amendment after the conclusion of discovery and the case had been placed on the trial roster because it would cause significant delay and impose substantial additional discovery costs that would not have been necessary if the plaintiff had timely made the motion to amend).

In this case, all three defendants were well aware of the claim for medical expenses because the claim was included in each original complaint. It made no difference to the defendants as to the merits of the claim whether Patton brought it in her own or her representative capacity. There is no indication defendants' procedural or evidentiary presentation would have varied at all if Patton had been allowed to amend the complaint to assert the claim in her individual capacity. While permitting the amendment would cause the defendants to face the merits of the amended claim, the defendants' opportunity to defend the claim on the merits was no different than it would have been if Patton had originally brought the claim in her own capacity. There was no new issue presented by Patton's proposed amendment, the amendment would have caused the defendants no disadvantage as to the merits they did not already face, and therefore, there is no prejudice.

When we decided *Tucker, Hughey, Wilson,* and the other pre-Rules cases upon which the defendants rely for their argument the circuit court properly dismissed Patton's claims, we operated under the technical confines of code pleading. Today, however, we operate under the far more flexible notice pleading provisions of the Rules of Civil Procedure. As Professor Flanagan observed, "The purpose of the rules is to secure justice, and consequently, they reduce formalities and technicalities." Flanagan, *supra*, at 3. Disallowing the amendment draws us back to the technical pitfalls of code pleading we thought we escaped in 1985 when we adopted the Rules. As the Supreme Court of the United States wrote in 1962,

It is too late in the day and entirely contrary to the spirit of the ... Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The ... Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Foman*, 371 U.S. at 181–82, 83 S.Ct. at 230, 9 L.Ed.2d at 225 (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 86 (1957)); *see also Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016) ("In construing the South Carolina Rules of Civil Procedure, our Court looks for guidance to cases interpreting the federal rules." (citing *Gardner v. Newsome Chevrolet–Buick, Inc.*, 304 S.C. 328, 330, 404 S.E.2d 200, 201 (1991))); 4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1029 (4th ed. 2015) ("The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies."); 3 *Cyclopedia of Federal Procedure* § 8.2 (3d ed., rev. 2017) ("The spirit of the Rules is to settle controversies upon their merits rather than to dismiss actions on technical grounds, to permit amendments liberally, and to avoid, if possible, depriving a litigant of a chance to bring a case to trial.").

Because the record contains no basis for a conclusion the defendants would have been prejudiced by allowing Patton to amend her complaint, we find the circuit court erred in not allowing the amendment.

## B. Rule 15(c)

If the circuit court had allowed the amendment, the court would then have been required to address Rule 15(c)—whether the amendment related back to the time of Patton's initial complaints against the parties. In March 2012 when Patton filed her lawsuit against Amisub, and in August 2013 when Patton moved to amend her complaint to assert claims in her individual capacity, the three year statute of limitations on Patton's individual claims had expired. *See* S.C. Code Ann. § 15-3-545(A) (2005) (setting the statute of limitations on a

medical malpractice action at three years). In November 2009, however, when Patton filed suit against Dr. Miller and Rock Hill Obstetrical, the statute of limitations had not expired. Therefore, for Patton's individual claims to comply with the statute of limitations, her amended complaint must relate back to when she filed Alexia's claim against Dr. Miller and Rock Hill Obstetrical.

Rule 15(c) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading.

Patton's individual claim against Dr. Miller and Rock Hill Obstetrical for Alexia's medical expenses satisfies Rule 15(c) because it is the exact claim she made in the representative capacity. In fact, there is no difference between the old claim and the new claim except the capacity of the person bringing it. Therefore, Patton's amended claims against Dr. Miller and Rock Hill Obstetrical for Alexia's medical expenses relate back to the November 2009 filing and comply with the statute of limitations.

The defendants rely on *Valentine v. Davis*, 319 S.C. 169, 460 S.E.2d 218 (Ct. App. 1995), for their contention that Rule 15 does not permit amendments "to add a new plaintiff to the case." In *Valentine*, after a complicated procedural history involving claims in state and federal court, there remained one state court action with three plaintiffs, and one federal action in which the Valentines were plaintiffs, all against the same defendant—the Davis group. 319 S.C. at 170-71, 460 S.E.2d at 219. The three state court plaintiffs were Shelly and Larry Williams, whose claims concerned repairs to the Williams' home, and Thomas Slother, whose claim concerned an alleged debt the defendant owed Slother. *Id.* The Valentines, who had previously been plaintiffs in the state court action, had a similar—but separate—claim pending in federal court concerning repairs to the Valentines' home. *Id.* When the federal court later dismissed the Valentines' claims, "Slother and the Williams filed a motion to amend the state court complaint to reinstate the Valentines to the action." 319 S.C. at 171, 460

S.E.2d at 219. The circuit court "denied the motion finding no basis under the South Carolina Rules of Civil Procedure to join the Valentines as plaintiffs." *Id.* On appeal from that ruling, the court of appeals held Rule 15 does not allow a new plaintiff to assert a new and separate claim. 319 S.C. at 172, 460 S.E.2d at 219. The court of appeals stated,

The proposed amended complaint shows the allegations asserted by the Valentines, Slother, and the Williams do not arise out of the same transaction or series of transactions or occurrences. In fact, the only connection between the claims is that the Valentines, Slother, and the Williams are represented by the same attorney and they all assert different personal claims against the Davis group.

319 S.C. at 172, 460 S.E.2d at 220.

Contrary to the situation in *Valentine*, Patton sought to amend *her own* complaint to maintain *the same* claim in a different capacity. The reasoning in *Valentine* is sound, but the decision stands only for the proposition that Rule 15 does not contemplate adding a new plaintiff to assert a new claim, and thus *Valentine* is inapplicable to this case.

Patton, on the other hand, relies on *Thomas v. Grayson*, 318 S.C. 82, 456 S.E.2d 377 (1995). In *Thomas*, the plaintiff brought a wrongful death and survival action in the federal district court of South Carolina alleging medical negligence in causing the death of her husband. 318 S.C. at 84, 456 S.E.2d at 378. She did so, however, only in her capacity as personal representative appointed by the probate court of her home state of Michigan. *Id.* "The defendants answered claiming that Mrs. Thomas lacked capacity to sue because she failed to allege her qualification and/or appointment as personal representative in South Carolina." 318 S.C. at 85, 456 S.E.2d at 378. The plaintiff was subsequently appointed personal representative by a South Carolina probate court and moved to amend her complaint to assert the same claims in her new capacity. *Id.* "However, this was done after the three year period for commencing an action under the wrongful death statute had expired." *Id.* When the "defendants moved for dismissal" on the ground the "plaintiff was not duly qualified as a personal representative under South Carolina law when the complaint was filed," the district court certified three questions to this

Court. *Id.* One of the questions was, "Would the ... adoption of Rules 15(c) ... and 17(a) ... of the South Carolina Rules of Civil Procedure allow for the relation back of any amendment to the complaint to assert the qualification in South Carolina of the foreign personal representative in an action which was otherwise timely?" 318 S.C. at 84, 456 S.E.2d at 378.

Mrs. Thomas—like Patton—was the original plaintiff who sought to amend her complaint to assert the same claim in a new capacity. Also like Patton, Mrs. Thomas did not attempt the amendment until the statute of limitations had run for any new party asserting a claim. The situation in *Thomas*, therefore, is the same as the situation here.

Discussing the impact of the adoption of the Rules of Civil Procedure on the issues we faced in *Thomas*, we began with Rule 17(a). We stated,

Rule 17(a) has changed the result when the amended pleading merely amplifies the old cause of action, provided that the defending party was originally placed on notice of the events involved. The real party in interest is no longer precluded from being named plaintiff, after the statute of limitations has run on a claim timely filed by one who lacked capacity to sue because he was not the real party in interest. Instead a reasonable time must be allowed after objection for ratification of commencement of the action and it has the same effect as if the action had been commenced in the name of the real party in interest. We find that the current Rule 17(a) changes existing State law where the action was brought within the applicable limitations and the real party in interest joined and ratified the action shortly thereafter in accordance with the requirements of Rule 17(a).

318 S.C. at 87, 456 S.E.2d at 380.

We then turned to Rule 15, and held Rule 15 also permits the amendment, and the amendment relates back to the original complaint under Rule 15(c). 318 S.C. at 88-89, 456 S.E.2d at 380. We stated, "The test ... under Rule 15(c) ... is ... whether the claim ... asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading," and then,

Rule 15(c) is based on the concept that once litigation involving particular conduct or a given transaction or occur-

rence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

318 S.C. at 88, 456 S.E.2d at 380.

Patton's amended claim is indistinguishable from the amended claim in *Thomas*. It is the same claim asserted by the same person in a new capacity. The defendants argue, however, that *Thomas* is distinguishable from this case because all the plaintiff's amended claims in that case were made in the plaintiff's new capacity, but in this case Patton makes the amended claims in her individual capacity, while some of the original claims remain in her representative capacity. Thus, the defendants argue, Patton seeks to add a new capacity, but *Thomas* permits only the substitution of one capacity for another. The defendants also argue *Thomas* is distinguishable because the plaintiff sought to change from one representative capacity to another representative capacity, while Patton sought to change from a representative capacity to her own individual capacity.

We find no basis for the defendants' arguments in Rule 15 or in *Thomas*. Considering the defendants' arguments in light of *Thomas*, however, we are convinced that our Rule 15(c) analysis is inseparable from a Rule 17(a) analysis when the dispute concerns the identity of the proper plaintiff. In *Thomas*, we stated, "The subsequent adoption of Rules 15(c) and 17(a), SCRCP allow for the relation back of an amendment to the complaint," and we permitted the same person to assert the same claim in a new capacity. 318 S.C. at 88, 456 S.E.2d at 380; *see also* 6 *Cyclopedia, supra,* at § 21.11 ("When an action is brought by someone other than the real party in interest within the limitations period, and the real party in interest joins or ratifies the action after the limitations period has run, the amendment or ratification relates back to the time suit was originally filed and the action need not be dismissed as time barred. . . .").

The defendants also argue the court of appeals' decision in *Twelfth RMA Partners, L.P. v. National Safe Corp.,* 335 S.C. 635, 518 S.E.2d 44 (Ct. App. 1999), supports their position that

a new plaintiff may be added only when there is a clear substitution, not when the original plaintiff remains for some claims. We read *Twelfth RMA* to support Patton's right to amend her complaint. First, the court of appeals considered both Rule 15(c) and Rule 17(a) in its analysis. 335 S.C. at 641, 518 S.E.2d at 47. In addition, the court distinguished *Valentine* on the same basis we have distinguished it—that *Valentine* involved a new claim, whereas the case before it involved a new plaintiff to assert the same claim. *Id.* Relying on both Rule 15(c) and Rule 17(a), the court of appeals permitted an amendment similar to the amendment Patton sought to make. *Twelfth RMA* does not support the defendants' position.

We find the circuit court erred by refusing to permit the amendment as to Patton's individual claims against Dr. Miller and Rock Hill Obstetrical. We also find the circuit court erred in not recognizing that the amendment relates back to November 2009. Patton's individual claim against Amisub, however, must be treated differently. Patton has effectively conceded that she may not pursue a claim for pre-majority medical expenses against Amisub.

### V. Conclusion

The parties framed the question posed in this appeal as whether this Court should change the common law rule expressed in *Tucker*, *Johnston*, *Hughey*, and others. We frame the question differently, and in this opinion we have done nothing more than apply the South Carolina Rules of Civil Procedure. Pursuant to Rule 17(c), "Whenever a minor ... has a representative, ... the representative may sue ... on behalf of the minor...." If a dispute arises as to whether that representative is "the real party in interest," Rule 17(a) governs the dispute. If the representative seeks to amend the complaint, Rules 15(a), 15(c), and 17(a) provide there should be no unnecessary dismissal, but rather the parties and the trial court should work to reach the merits. In this case, the circuit court failed to apply these Rules, and unnecessarily dismissed a claim it should have tried on the merits.

We **REVERSE** the circuit court's award of partial summary judgment to Dr. Miller and Rock Hill Obstetrical, **AFFIRM**

partial summary judgment to Amisub, and **REMAND** to the circuit court for the completion of discovery and trial.

BEATTY, C.J., and KITTREDGE, J., concur. HEARN, J., concurring in a separate opinion. Acting Justice Costa M. Pleicones, dissenting in a separate opinion.

JUSTICE HEARN:

I concur in result with the majority. However, I would limit resolution of the case to Justice Few's thorough analysis of Rule 15, SCRCP, and would not reach the discussion of Rule 17, SCRCP. Because the parties did not advance any arguments regarding the application or interpretation of Rule 17, I find the issue is not properly before us at this time. *See Kennedy v. S.C. Retirement Sys.*, 349 S.C. 531, 533, 564 S.E.2d 322, 323 (2001) (repeating the maxim, "[A]ppellate courts, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked.").

ACTING JUSTICE PLEICONES:

I respectfully dissent and would dismiss the writ of certiorari as improvidently granted as I agree with the opinion of the Court of Appeals. *See Patton v. Miller*, Op. No. 2015-UP-367, 2015 WL 4467372 (S.C. Ct. App. filed July 22, 2015).