**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

David L. Scheer, as Personal Representative of the Estate of Matthew J. Scheer, Respondent,

v.

Southern Myrtle Inpatient Services, LLC, Nirlep A. Patel, M.D., and Rachel Ash-Bernal M.D., Defendants,

Of which Southern Myrtle Inpatient Services, LLC is the Appellant.

Appellate Case No. 2019-001665

———————————

Appeal From Horry County
John C. Hayes, III, Circuit Court Judge

———————————

Unpublished Opinion No. 2023-UP-002
Heard October 12, 2022 – Filed January 4, 2023

———————————

**AFFIRMED**

———————————

Robert L. Widener, of Burr & Forman LLP, of Columbia, for Appellant.

William R. Padget and Francis M. Hinson, IV, both of HHP Law Group, of Columbia, for Respondent.

———————————

**PER CURIAM:**  This is an appeal by Southern Myrtle Inpatient Services, LLC (Southern Myrtle).  At the time of the events in this lawsuit, Southern Myrtle employed doctors practicing at Grand Strand Hospital (Grand Strand) in Myrtle Beach.

Matthew Scheer was a patient at Grand Strand.  Within the span of several hours, he was admitted to the hospital by one physician and then allowed by another to leave against medical advice.  Matthew was admitted to the hospital based on recent behavior suggesting he was experiencing acute psychosis.  He was discharged after he had an outburst and insisted on leaving in the middle of the night.  Sadly, he died a short time later.  Not long after Matthew left the hospital, witnesses saw a man fitting Matthew's description take off his clothes and run screaming into the ocean.

Matthew's father David Scheer filed this lawsuit in his capacity as personal representative of Matthew's estate.  David sued the two doctors, Southern Myrtle, and Grand Strand.  Grand Strand settled.  The claims against the doctors and Southern Myrtle went to a jury trial.

The allegations against the doctors were for medical malpractice.  The claims were that Matthew's first physician had not conducted a proper "handoff" of Matthew as a patient, that the second physician erred in allowing Matthew to leave the hospital, and that the second physician erred in not phoning Matthew's emergency contact (which was David) before Matthew left.

The claims against Southern Myrtle were for vicarious liability (for any negligence by its employees) and "direct" liability.  The theory on direct liability was that Southern Myrtle inadequately trained or failed to train the doctors on when they could involuntarily detain a patient like Matthew and when they could disclose patient healthcare information under the Health Insurance Portability and Accountability Act (HIPAA).

All of these claims went to the jury, and the jury returned a plaintiff's verdict.  Southern Myrtle appeals the denial of its motion for judgment notwithstanding the verdict (JNOV) and its motion for a new trial.

**JNOV**

Southern Myrtle argues it was entitled to judgment as a matter of law because (1) it did not owe any duty directly to Matthew and did not have a duty to train the doctors; (2) there was not expert testimony establishing the existence of any duty or its

breach; and (3) any breach did not proximately cause Matthew's injuries. As this description implies, all of these arguments are focused on the direct theories of liability against Southern Myrtle. This no doubt results from the fact that the jury allocated 100% of the fault to Southern Myrtle, no fault to Matthew, and appeared to allocate no fault to the doctors.

If that description were the full story of this case, we would have to directly face Southern Myrtle's arguments. But that is not the full story. The circuit court charged the jury:

> A corporation is responsible for all the actions or inactions of its agents or employees that are performed within the course and scope of that agency relationship. Here, it is undisputed that [the doctors] were employees of Southern Myrtle Inpatient Services, LLC, at all relevant times. *You should consider any acts or omissions of [the doctors] to be the acts of Southern Myrtle Inpatient Services, Inc.* In addition, Plaintiff has alleged and Defendant Southern [Myrtle] has denied that it, Southern Myrtle, failed to provide education and training to [the doctors] relating to the applicable standard to detain a mentally ill patient and . . . permissive disclosure of health information. You may consider these alleged actions or failures of the corporat[e] Defendant along with the other allegations.

(emphasis added).

Southern Myrtle's core argument to us rests on the premise that the jury acquitted its physicians of wrongdoing. We respectfully disagree, for two reasons. First, the jury charge we recited above appears to accurately state the law of respondeat superior liability—the principle that an employee's torts are imputed to the employer. *West v. Serv. Life & Health Ins. Co.*, 220 S.C. 198, 202, 66 S.E.2d 816, 817 (1951). Still, when read literally, the charge instructs the jury to attribute the doctors' fault to Southern Myrtle. The jury was not, for example, instructed to allocate Southern Myrtle's fault on the verdict form based only on Southern Myrtle's purported direct liability. We do not think the verdict form as completed by the jury leads indisputably to the conclusion that the jury believed Southern Myrtle's doctors acted in conformity with the standards of care.

The second reason we disagree with the idea that the jury acquitted Southern Myrtle's doctors is that there is no doubt the jury returned a plaintiff's verdict. Indeed, as noted above, the jury found no fault with Matthew. No argument is made to us that the verdict is internally inconsistent. The absence of that argument may be attributable to the fact that the remedy for an inconsistent verdict is a new trial, not JNOV. *Stevens v. Allen*, 342 S.C. 47, 52-53, 536 S.E.2d 663, 665-66 (2000). Because it is impossible for us to say whether the verdict is based on vicarious liability, direct liability, or both, we must sustain the verdict based on the two-issue rule and the rule that we sustain verdicts if it is possible to do so. *See Vinson v. Jackson*, 327 S.C. 290, 293, 491 S.E.2d 249, 250 (1997) ("A jury verdict should be upheld when it is possible to do so and carry into effect the jury's clear intention." (quoting *Johnson v. Parker*, 279 S.C. 132, 135, 303 S.E.2d 95, 97 (1983))); *Anderson v. S.C. Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 419-20, 472 S.E.2d 253, 254-55 (1996) (explaining the two-issue rule); *id.* at 420, 472 S.E.2d at 254 ("[W]hen a jury's general verdict is supportable by more than one cause of action submitted to it, the appellate court will affirm unless the appellant appeals all causes of action.").

To be fair, the record suggests that even though the parties agreed on the verdict form, the verdict form became an issue during jury deliberations. The jury asked, "If we give zero percent fault to any Defendants would they be guilty of malpractice?" According to the record, the plaintiff took the position that a zero allocation of fault meant a physician was acquitted of malpractice. We do not agree with this position. First, there was the charge we have already noted that the jury should ascribe the doctor's actions to Southern Myrtle. Then, there is the fact that there could not be employer liability in this sort of situation (whether vicarious or direct) without an employee first breaching a standard of care and injuring the plaintiff. Take *James v. Kelly Trucking Co.*, 377 S.C. 628, 661 S.E.2d 329 (2008)—one of the key cases in South Carolina on an employer's direct liability. That case would not exist unless one of Kelly Trucking Company's drivers had first (allegedly) caused a wreck. *Id*. at 630, 661 S.E.2d at 330. The very idea that an employer like Southern Myrtle could potentially be liable for failing to train an employee on the standard of care presupposes that the employee has acted in a way that deviates from that standard.

For these reasons, we cannot say that this verdict acquitted the physicians and relies on Southern Myrtle's purported direct liability.

**NEW TRIAL**

Southern Myrtle argues the case should be retried because the circuit court erred in admitting evidence on the claim that Southern Myrtle failed to train its physicians on permissible disclosures of healthcare information under HIPAA. Southern Myrtle claims a new trial is warranted because David did not plead this claim in his amended complaint.

This argument is controlled by the same reasoning we have given above. We do not know whether this verdict rests on the "permitted HIPAA disclosures" theory of liability or the "failure to detain" theory of liability. And beyond that, we note that we do not understand why Southern Myrtle would ask for a "new trial" when the argument is that the claim was never pled and should not have been tried at all.

Even if we were to reach the argument, we would respectfully disagree with it. The amended complaint alleged (among other things):

> The Defendants, individually, and by and through their agents and servants, deviated from the applicable standards of care, and were negligent, grossly negligent, careless and reckless, in the following particulars:
>
>  . . .
>
> c. failing to contact Matthew's father to inform him that Matthew was desiring/attempting/planning to leave [Grand Strand];
>
> d. failing to involuntarily commit Matthew and otherwise allowing Matthew to leave [Grand Strand];
>
> e. failing to educate and otherwise train physicians and staff as to the ability, means, and mechanisms to detain a mentally ill patient against his/her will; and
>
> f. in such other and further particulars as discovery or evidence at trial may reveal.

Our review of the record convinces us that the theories of liability that went to the jury have been apparent throughout this lawsuit's lifespan. The amended complaint explicitly advertises that David planned to argue about the failure to contact him, the failure to involuntarily detain Matthew, and alleged failures in training. This was

sufficient considering the liberal rules on pleadings. *See Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) (explaining courts should construe pleadings liberally); *Patton v. Miller*, 420 S.C. 471, 493, 804 S.E.2d 252, 263 (2017) (explaining courts should avoid deciding cases on pleading technicalities); Rule 9, SCRCP (not including negligence on the list of special matters that require pleading with specificity instead of a general averment). HIPAA training was discussed throughout discovery in this case and featured prominently in multiple depositions. From the very beginning of trial, there did not seem to be any surprise or lack of preparedness by Southern Myrtle respecting the argument it failed to train on permitted disclosures. *See Shirley's*, 403 S.C at 574, 743 S.E.2d at 785 (explaining the purpose of pleadings is to inform the defendant of what it needs to be prepared to defend against). Southern Myrtle met this theory on the merits. It cross-examined David's expert on the expert's testimony about HIPAA training and presented its own expert who reviewed its training curriculum and testified the training was adequate. We do not see how a new trial on this claim would be any different from the trial the parties already had, and we do not see an abuse of discretion by the circuit court in admitting the evidence. *See Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25-26, 609 S.E.2d 506, 509 (2005) (explaining appellate courts review evidentiary issues for abuse of discretion).

**CONCLUSION**

For these reasons, the circuit court's order is

**AFFIRMED.**

**KONDUROS, HEWITT, and VINSON, JJ., concur.**